Clement I. MOMAH, M.D., Plaintiff,

v.

ALBERT EINSTEIN MEDICAL CENTER, et al., Defendants.

No. 94–CV–7043.

United States District Court, E.D. Pennsylvania.

Jan. 30, 1996.

Willan F. Joseph, Philadelphia, PA, for Plaintiff.

Hope A. Comisky, Anderson Kill Olick & Oshinsky, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The plaintiff in this case is Clement I. Momah, M.D., a black man of Nigerian origin who had been employed as a resident in the obstetrics and gynecology department at the Albert Einstein Medical Center ("AEMC") in Philadelphia. Dr. Momah has alleged in his complaint that he was unlawfully discharged from his position on the basis of race and national origin, and has brought this action against AEMC; Old York Road Ob/Gyn Associates, P.C.; Sze-ya Yeh, M.D.; and Jeffrey Levy, M.D. (collectively, "Defendants"). This memorandum and order resolves two discovery disputes in this increasingly contentious action. The first arises from Defendants' aborted attempt to depose a non-party witness, while the second results from Defendants' refusal to provide meaningful responses to a number of Plaintiff's interrogatories and requests for production of documents. We turn now to address these disputes.

I

As noted above, the first area of conflict centers on the aborted deposition of Dr. William A. Little, the chief of the Department of Obstetrics and Gynecology at Jackson Memorial Hospital in Dade County, Florida. Over the course of discovery, Defendants learned that Dr. Momah had previously been employed at Jackson Memorial Hospital. Moreover, Defendants discovered that Dr. Momah had been terminated on the grounds that his performance and conduct were unsatisfactory and that he had misrepresented his creden-

tials to the hospital. Dr. Little notified Dr. Momah of his termination by letters dated May 2 and October 24, 1991.[1] The information regarding the termination of Dr. Momah's residency raised questions as to his credibility[2] and made it possible for Defendants to pursue an "after-acquired evidence" defense.[3] Accordingly, on November 3, 1995, Defendants subpoenaed Dr. Little to appear for a deposition scheduled for November 27, intending to question him regarding Dr. Momah's credentials and the representations he made concerning them, as well as his performance and the circumstances surrounding his discharge.

On November 27, Defendants' counsel, Hope A. Comisky, Esquire, flew from Philadelphia to Miami in order to depose Dr. Little. Also appearing at the deposition were Plaintiff's Philadelphia-based counsel of record, who participated by telephone; Plaintiff's local counsel, Alan Medof, Esquire; and Jack P. Hartog, Esquire, who appeared on behalf of Dr. Little. At the outset of the deposition, Mr. Hartog sought an assurance that Dr. Little would not be exposing himself to liability for alleged breach of the settlement agreement[4] by providing his deposition. Accordingly, he instructed Dr. Little not to offer any testimony unless Dr. Momah agreed to waive his rights under the settlement agreement. Dr. Momah's lawyers were prepared to move forward with the deposition, but refused to provide such a waiver. As a result, the deposition was aborted.

Defendants have since filed the instant motion, in which they argue that Dr. Momah's attorneys prevented the deposition from going forward as noticed. They therefore ask us to (1) declare that the settlement agreement does not prevent Dr. Little from offering unfettered testimony regarding Dr. Momah's residency at Jackson Memorial Hospital; (2) order that Plaintiff and his counsel not obstruct Dr. Little's deposition; and (3) sanction Plaintiff and his counsel for obstructing the November 27 deposition. Dr. Momah has submitted a response in opposition to Defendants' motion, contending that Defendants have mislead the Court as to the party responsible for obstructing the deposition, and asking that we sanction them for this conduct.

▪ Two issues are therefore before us: the first concerns the scope of Dr. Little's deposition in light of the settlement agreement, while the second requires us to assign responsibility for the deposition's cancellation. In considering the former issue, we conclude that the settlement agreement in no way limits the range of Dr. Little's deposition. As noted previously, the settlement agreement limits 'the extent to which Dr. Little can respond "[i]n the event any party requests a written or oral recommendation or evaluation of Dr. Momah's performance." In construing a settlement agreement, the general rule of law is that a court must give effect to the "plain meaning" of the language. *Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F.Supp. 370, 373 (E.D.Pa.1993); *Berry v. Berry*, 550 So.2d 1125, 1126 (Fla.App. 3 Dist.1989). Here, the plain meaning of the language at issue suggests that Dr. Little is bound only when such information is "requested," such as if a po-

---

1. Dr. Momah later filed suit in Dade County, presumably contesting the termination of his residency. In resolution of the suit, the parties entered into a settlement agreement on June 5, 1992, which provides, in relevant part, as follows:

   In the event any party requests a written or oral recommendation or evaluation of Dr. Momah's performance, Dr. Little's response, which will be the official position of the Department, will be limited to the following information reflective of the maximum credit afforded Dr. Momah by the American Board of Ob/Gyn ...

2. Defendants contend that the documents produced provide a version of events regarding the

termination that differs from the version set forth by Dr. Momah in his deposition.

3. Defendants cite *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, ——, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995), for the proposition that an employer-defendant in a federal discrimination case is liable for damages from the date of termination until the date it discovers evidence which would have been just cause for discharge, even if such evidence is discovered during the course of a suit against the employer, and might have gone unnoticed in the absence of a suit.

4. *See supra*, note 1.

tential future employer should seek it to evaluate Dr. Momah's suitability for a position of employment. The provision does not and cannot apply to a situation like the present one, where Dr. Little has been commanded to provide a deposition under power of subpoena. Accordingly, the agreement does not preclude Dr. Little from offering his testimony; and he therefore can incur no liability for so doing. We will therefore allow Defendants the opportunity to depose Dr. Little on a convenient date within fourteen (14) days of the date of the attached order.

Having decided that Dr. Little can testify without fear of breaching his agreement with Dr. Momah, we turn now to determine whether either party is entitled to an award of sanctions. Pursuant to Rule 37(a)(4)(A), the court is required to sanction the party or deponent whose conduct necessitated the filing of a motion to compel, after providing that party with an opportunity to be heard, unless the "nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." Defendants insist in their memorandum and reply brief that Dr. Momah obstructed the deposition proceedings, and that he had a duty under the rules to seek a protective order if he objected to the taking of the deposition.

■ A fair reading of the deposition transcript, however, compels a different conclusion. The record reveals that it was Mr. Hartog who, at the outset of the proceeding, instructed his client not to submit to questioning unless and until Dr. Momah waived his rights under the settlement agreement. From the transcript:

> MR. HARTOG: The problem, therefore, that I have is Dr. Little, by answering questions at this deposition, subjects him-

self to liability from Dr. Momah for alleged noncompliance with the settlement agreement.

> That is not a situation that my client wants to be in, as I am sure you understand, and, therefore, I have instructed him, and he has agreed, that he will not answer questions unless and until that point is clarified.

Tr., pp. 7–8.

Thus, while it is apparent from the transcript that Dr. Momah and his attorneys hoped to use the introduction of the settlement agreement issue as a means to narrow the scope of the deposition,[5] it was Dr. Little who, at bottom, refused to testify in the absence of a waiver or other assurance that he would not be subjected to a lawsuit as a result of his testimony. Dr. Momah refused to waive his rights under the agreement. Dr. Momah was therefore under no obligation to seek a protective order, as Defendants contend, since he did not object to the taking of the deposition.[6] Indeed, the only conduct for which Dr. Momah can possibly be faulted is his refusal to provide a waiver. In other words, Defendants can prevail on the sanctions issue only if they are able to show to us that Dr. Momah was under some legal obligation to waive his rights under the circumstances. Defendants have failed to cite any law suggesting that Dr. Momah was required to so waive his rights; and we suspect there is none. Accordingly, we can find no fault with Dr. Momah's behavior, and as a result, we must deny Defendants' motion for sanctions.[7]

## II

■ The second motion we must resolve is Plaintiff's motion to compel responses to

---

5. Mr. Joseph, one of Dr. Momah's attorneys, objected to questioning regarding subjects unrelated to the after-acquired evidence defense, arguing that Dr. Momah would not waive his rights under the agreement to allow such questioning. *See* Tr., p. 8 ("It has to do with [Defendants' attorney] going on a fishing expedition for information that is really off limits, and so we will not allow or waive the agreement between Dr. Little and Dr. Momah to the extent that that would permit [Defendants' attorney] to go on this fishing expedition.").

6. From the transcript:

> PLAINTIFF'S COUNSEL OF RECORD: ... my client is not stopping you today from taking the deposition. He is just not going to waive what Mr. Hartog wants him to waive.

Tr., p. 16.

7. Likewise, since Plaintiff has provided no legal basis on which we can rest an award of sanctions in his favor, his request for sanctions will be denied.

discovery. As noted above, Defendants have refused to comply fully with a number of Dr. Momah's discovery requests. Pursuant to Fed.R.Civ.P. 26(b)(1), a party is entitled to discovery relating to the subject matter of the lawsuit, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Courts have construed this language liberally, "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). The onus is therefore on the party objecting to discovery to state the grounds for the objection "with specificity." Fed.R.Civ.P. 33(b)(4). Mere recitation of the familiar litany that an interrogatory or a document production request is "overly broad, burdensome, oppressive and irrelevant" will not suffice. *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982); *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 295 (E.D.Pa.1980). If the objection has been properly articulated, it rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26. When this showing has been made, the party opposing discovery must convince the court why discovery should not be had. *Amcast Indus. Corp. v. Detrex Corp.,* 138 F.R.D. 115, 118–19 (N.D.Ind.1991) (citations omitted). With this standard in mind, we turn to the areas of dispute.

### A. *Records of Other Residents*

■ Dr. Momah seeks production of the personnel records and performance evaluations of the other residents at AEMC. He asserts that such information is needed to support his allegation that non-African residents received more favorable treatment. Such an allegation is relevant to an employment discrimination action, and is likely to find backing, if anywhere, in the documents that Dr. Momah seeks. Defendants object to this discovery on the grounds that they have already voluntarily culled the personnel records and produced documents which could be considered relevant. Dr. Momah, however, is entitled to access to the records and may make arguments as to relevance and weight later in the proceedings. It is enough for us

to conclude now that access to the records could reasonably lead to the discovery of admissible evidence. Accordingly, the motion to compel will be granted as it relates to the personnel records and performance evaluations of the other residents.

### B. *Psychiatric Counseling Recommendations*

Dr. Momah alleges that during the course of his tenure at AEMC, Defendants recommended that he receive psychiatric counseling to address what they perceived to be Dr. Momah's argumentative and confrontational demeanor. Thus, during discovery, Dr. Momah requested the name, gender and race of each resident who was recommended for psychiatric evaluation for any reason, including as a condition to remain in the residency program. In his motion, Dr. Momah fails to specify the reason he requires this information; we presume that he hopes to argue that non-African residents were not asked to undergo psychiatric counseling. Defendants responded to the request by informing Dr. Momah that psychiatric evaluation had been recommended for one white resident, but declined to provide further details, citing confidentiality concerns.

■ In considering this issue, we first note that the parties have executed a confidentiality agreement which should adequately address Defendants' concerns. Moreover, as we read the discovery request, Dr. Momah is not asking whether other residents were treated by a psychiatrist or for substantive information regarding any evaluation or treatment that occurred, but is instead questioning whether Drs. Yeh or Levy, acting in their capacity as residency program administrators, recommended that another resident seek counseling, either as a condition of probation or as a condition to remain in the program. Accordingly, we will order Defendants to provide the name, race and gender of any resident they recommended for psychiatric treatment, and also indicate whether the treatment was recommended as a condition of probation or as a condition to remain in the residency program.

### C. *Patient Medical Records*

■ Defendants allege that Dr. Momah was terminated, in part, because of his inability to interact appropriately with patients and other members of the staff. As part of any employment discrimination action, the plaintiff must challenge the validity of the employer's stated reason for discharge. Thus, Dr. Momah has requested the name, address and medical chart of any patient who complained about him either orally or in writing. In particular, Dr. Momah seeks access to the records of a certain patient who apparently complained that the plaintiff had given her improper discharge instructions. He claims that he was counseled as to his treatment of the patient two weeks before he even began treating her.

■ Defendants contend generally that the plaintiff was terminated based upon the patients' *perception* of the quality of the treatment they received from Dr. Momah. Thus, Defendants argue that the medical charts are irrelevant, since the quality of the care actually provided by Dr. Momah is not at issue. This argument is persuasive. This case is not about Dr. Momah's competence; instead, it concerns the validity of the stated reason for discharge and whether the real reason for Dr. Momah's termination was discrimination. Thus, while he is entitled to the names and addresses of the complaining patients so that he can investigate the complaints they allegedly made, he will not be granted access to their medical records so that he can argue that the patients blamed him erroneously. With regard to the particular patient discussed above, Dr. Momah will not be granted access to her record, but is entitled to know the dates on which he treated her and the dates on which she stayed at AEMC.

### D. *Dr. Levy's Computer Records*

■ Dr. Momah also seeks a copy of the computer list files screen for documents relating to Dr. Momah in Dr. Levy's computer system. The computer list screen lists each document created by name or number, as well as the size of the document, the date on which it was created and the date on which it was last edited. Dr. Momah claims that he needs this information so that he can verify when certain documents relating to his discharge were created. He claims Dr. Levy has admitted to incorrectly dating a disciplinary memorandum relating to Dr. Momah, and that such an act places in dispute the issue of when certain documents were created and edited. While it is a close question, we will allow Dr. Momah access to the computer list screen. If he can show that Defendants back-dated a number of the documents used to support the discharge, it could serve to cast doubt on the stated reason for termination. Accordingly, in this respect, the motion to compel will be granted.

### E. *Quality Assurance Meetings*

■ Another of Defendants' stated reasons for discharge is that Dr. Momah failed to submit statistical records in a timely fashion. The records are important for quality assurance purposes, and are needed for the purpose of conducting quality assurance meetings. Dr. Momah believes that no such meetings were convened in July, August, or September of 1993, and so argues that this stated reason for discharge is not credible. Thus, Dr. Momah seeks the attendance sheets and the minutes from the quality assurance meetings, if they exist. We conclude that the question of whether the meetings did or did not occur pertains to the validity of this stated reason for discharge. Thus, while Dr. Momah is entitled to access to the attendance sheets, which should provide a sufficient answer to the question at issue, he has not demonstrated a need for copies of the minutes. Accordingly, we will order Defendants, if they are able, to produce the attendance sheets.

### F. *Complication Rate Records*

■ Dr. Momah asserts that he is entitled to access to the complication rate records for the period of his employment. He claims that such information is needed to support his claim that "egregious" acts by non-African residents were overlooked, while he was disciplined more severely for relatively minor offenses. Defendants object on the grounds that the complication records relate to the treatment of patients, and that Dr.

Momah was not terminated on account of his skill as a physician. The issue here, however, is the manner in which Defendants responded to missteps made by Dr. Momah vis a vis other residents. Given the issues presented by this case, this is a permissible area of discovery. Accordingly, we will order Defendants to produce the complication rate records for the period of Dr. Momah's employment: June 18, 1992 through October 31, 1993.

### III

Having considered both Defendants' motion to compel and for sanctions and Plaintiff's motion to compel, we have concluded that we must grant both motions in part, as set forth in the attached order.

### *ORDER*

AND NOW, this 30th day of January, 1996, upon consideration of Defendants' Motion to Compel Discovery and for Sanctions, it is hereby ORDERED that:

1. Defendants shall be permitted to depose Dr. William A. Little on a convenient date within fourteen (14) days of the date of this Order regarding any and all topics relevant to this litigation;

2. The Settlement Agreement referenced in the attached Memorandum does not in any way narrow the scope of Dr. Little's deposition testimony;

3. Defendants' request for sanctions is hereby DENIED; and

4. Plaintiff's request for sanctions is hereby DENIED.

IT IS FURTHER ORDERED, upon consideration of Plaintiff's Motion to Compel Discovery, and the response thereto, that said Motion is hereby GRANTED as follows:

1. Defendants shall produce the personnel records and performance evaluations of the other residents referenced in the preceding Memorandum within ten (10) days of the date of this Order;

2. Defendants shall provide a full and complete response to Request 14 of Plaintiff's Second Set of Interrogatories within ten (10) days of the date of this Order;

3. Defendants shall provide Plaintiff with the names and addresses of patients who lodged either oral or written complaints regarding Plaintiff, and, with respect to the patient identified as "C.S." in Defendants' Brief, shall provide Plaintiff with the dates on which C.S. stayed at Albert Einstein Medical Center and the dates on which Plaintiff treated C.S., within ten (10) days of the date of this Order;

4. Defendants shall provide Plaintiff with a copy of the computer list files screen for documents relating to Plaintiff in Defendant Dr. Levy's computer system within ten (10) days of the date of this Order;

5. Defendants shall, within ten (10) days of date of this Order, either provide Plaintiff with attendance sheets from quality assurance meetings for July, August and September, 1993, or inform Plaintiff that no such meetings were convened;

6. Defendants shall provide Plaintiff with complication records for the period between June 18, 1992 and October 31, 1993 within ten (10) days of the date of this Order; and

7. In all other respects, Plaintiff's Motion is hereby DENIED.