An appropriate Order accompanies this Opinion.

**Glenda MANCIA, et al., Plaintiffs,**

v.

**MAYFLOWER TEXTILE SERVS. CO., et al., Defendants.**

**Civ.A. No. 1:08–CV–00273–CCB.**

United States District Court,
D. Maryland.

Oct. 15, 2008.

Daniel Adlai Katz, Andalman and Flynn PC, Silver Spring, MD, C. Christopher Brown, Jane Reisen Flanagan, Brown Goldstein and Levy LLP, Baltimore, MD, for Plaintiffs.

Scott Victor Kamins, Eric J. Pelletier, Offit Kurman PA, Maple Lawn, MD, Andrew T. Nichols, Rollins Smalkin Richards and Mackie LLC, Baltimore, MD, Neil Stuart Hyman, Selzer Gurvitch Rabin and Obecny Chtd., Bethesda, MD, for Defendants.

## MEMORANDUM OPINION

PAUL W. GRIMM, Chief United States Magistrate Judge.

On January 31, 2008, Glenda Mancia, Maria Daysi Reyes, Alfredo Aguirre, Henri Sosa, Sandra Suzao and Obdulia Martinez ("Plaintiffs"), individually and on behalf of all similarly situated employees, filed a collective action against Mayflower Textile Services Co., Mayflower Healthcare Textile Services, LLC, Mayflower Surgical Service, Inc., Mayflower Uniforms and Medical Supplies, LLC, Lunil Services Agency, LLC, Argo Enterprises, Inc. and Mukul M. Mehta ("Defendants") for declaratory and monetary relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Pls.' Com., Paper No. 1. The Plaintiffs contended that the Defendants violated section § 207(a)(1) of the FLSA by knowingly failing to compensate Plaintiffs for overtime work and illegally deducting wages from the Plaintiffs' pay. *Id.* ¶¶ 37–40. The Plaintiffs further alleged that the supposed failure to provide overtime pay was a violation of the Maryland Wage and Hour Law, Md.Code Ann., Labor & Employ. §§ 3–401 *et seq.,* and the Maryland Wage Payment and Collection Act, Md.Code Ann., Labor & Employ. §§ 3–501 *et seq. Id.* ¶¶ 41–50.

On April 18, 2008, the Plaintiffs served interrogatories and document production requests on the Defendants. Certificate of Counsel Pursuant to Local Rule 104.7 at 1, Paper No. 42. Plaintiffs assert that the Defendants' responses were wholly "inadequate," and on June 25, 2008, the Plaintiffs served[1] Motions to Compel Supplemental Responses to Interrogatories and Document Requests on Defendants Mayflower, Mehta and Lunil. *Id.* On June 30, 2008, the Plaintiffs served an additional Motion to Compel on Defendant Argo. *Id.* On July 14, 2008, Defendants Mayflower, Lunil and Mehta served on the Plaintiffs a Consolidated Response to the Motions to Compel, Paper No. 42, # 5. Afterwards, on July 25, 2008, the Plaintiffs served Defendants Mayflower, Mehta and Lunil with Replies to the Defendants' Responses to the Motions to Compel

Supplemental Responses, Paper No. 42, ## 7–9. On August 1, 2008, Defendants Mayflower, Lunil and Mehta served on the Plaintiffs an Amended Consolidated Response, Paper No. 42, # 6. Defendant Argo did not file an opposition to the Plaintiffs' Motion.

On August 18, 2008, the Plaintiffs, having complied with Local Rule 104.8, filed Motions to Compel Defendants to Serve Supplemental Responses and Memoranda in Support Thereof, Paper No. 42, ## 2–4, 10, attaching all the memoranda and exhibits that had been served by the parties. On August 28, 2008, this case was referred to me for the purposes of resolving all discovery disputes. Paper No. 45.

The Motions, Responses and Replies filed were extensive. In regards to Defendant Mayflower, the Plaintiffs raised issues relating to fourteen document requests and sought two supplemental interrogatory responses. Pls.' Mot. Compel Def. Mayflower 2–14. The documents requested included the following: (1) an attachment or attachments to the contract between Defendant Mayflower and Defendant Lunil; (2) an attachment or attachments to the contract between Defendant Mayflower and Defendant Argo; (3) documents that support the making and execution of the contract between Defendant Mayflower and Defendant Lunil; (4) documents that support the making and execution of the contract between Defendant Mayflower and Defendant Argo; (5) all documents indicating the days and hours worked by the Plaintiffs; (6) all records concerning wages earned by the Plaintiffs; (7) postings in Defendant Mayflower's place of business that inform workers of their wage and overtime rights; (8) all documents related to Defendant Mayflower's payment to Defendant Lunil for labor performed by employees at Defendant Mayflower's place of business; (9) all documents related to Defendant Mayflower's payment to Defendant Argo for labor performed by employees at Defendant Mayflower's place of business; (10) all documents regarding vehicles in which employees of De-

---

1. Plaintiffs properly complied with Local Rule 104.8, and did not file their Motions, or the   Responses they received, until after the briefing was complete and counsel had conferred.

fendant Mayflower were transported to and from work; (11) records showing all production workers who worked at Defendant Mayflower's place of business during the last two pay periods of 2007 and the first pay period of 2008; (12) payroll based tax documents and filings for the period relevant to the litigation; (13) all documents showing the relationship with individual workers and Defendant Mayflower; (14) documents regarding the ownership of Defendant Mayflower. *Id.* at 2–12, Reqs. ## 1–7, 15–17, 21–23, 26, 28. The requested supplemental interrogatory responses sought the identity of the person or persons answering the interrogatories, and a description of the business operations of Defendant Mayflower. *Id.* at 12–14, Interrogs. ## 1, 3.

With Defendant Lunil, the Plaintiffs raised issues about ten document requests and sought two supplemental interrogatory responses. Pls.' Mot. Compel Def. Lunil 2–10, Reqs. ## 1–4, 12–13, 17, 19, 22, 25, Interrogs. ## 11, 3. As for Defendant Mehta, the Plaintiffs had issues with only two document requests. Pls.' Mot. Compel Def. Mehta 2–4, Reqs. ## 1–2. In essence, Plaintiffs sought the same type of information from Defendants Lunil and Mehta as they did from Defendant Mayflower.

Finally, the Plaintiffs raised issues about twenty-five document requests served on Defendant Argo, and further sought one supplemental interrogatory response. Pls.' Mot. Compel Def. Argo 2–10, Reqs. ## 1–25, Interrog. # 3. On September 29, 2008, Plaintiffs submitted correspondence notifying the Court of the resolution of four discovery disputes with Defendant Mayflower, three discovery disputes with Defendant Lunil and twenty disputes with Defendant Argo.[2] Having resolved most of their differences with Defendant Argo, the Plaintiffs still sought certain company records and also requested that Defendant Argo supplement its interrogatory response regarding the nature of its business, the locations and addresses where business operations had been conducted and the identities of its managerial and supervi-

sory staff at each location. *Id.* at 1–10, Reqs. ## 3–4, 12, 19, 21, Interrog. # 3.

During my review of the objections originally served by the Defendants in their Responses to Plaintiffs' discovery requests, I noted an obvious violation of Fed.R.Civ.P. 33(b)(4) (which requires that the grounds for objecting to an interrogatory must be stated with specificity, or else they are waived) and the ruling in *Jayne H. Lee, Inc. v. Flagstaff Indus.*, 173 F.R.D. 651, 655 (D.Md.1997) (also noting the obligation to particularize objections to interrogatories, on pain of waiver). Similarly, facially apparent violations of Fed. R.Civ.P. 34(b)(2), the rulings of the court in *Jayne H. Lee, Inc.*, 173 F.R.D. at 656 (failure to respond to document production request in one of three appropriate ways) and *Hall v. Sullivan*, 231 F.R.D. 468, 473–74 (D.Md. 2005) (failure to object with particularity to document production request waives objection), were noted.

Further, the failure by the Defendants to particularize their objections to Plaintiffs' discovery requests suggested a probable violation of Fed.R.Civ.P. 26(g)(1) (failure to conduct a "reasonable inquiry" before objecting to an interrogatory or document request). As a result of these apparent discovery violations, I scheduled an in-court hearing with counsel to address them.

This hearing took place on September 29, 2008. During the hearing I raised with counsel my concerns about the objections that had been filed by Defendants, as well as concern about the breadth of the Plaintiffs' discovery requests, and the possibility that they were excessively broad and costly, given what is at stake in this case. I advised counsel that the dispute appeared to be one that could be resolved, or substantially minimized, by greater communication and cooperation between counsel and the parties, and provided detailed suggestions for counsel to follow at a meet and confer session. I also explained that I would prepare a written opinion to more fully explain my concerns, suggestions and rulings, and instructed counsel how to respond if, after the conference,

---

**2.** Pls.' Correspondence 1–4, Paper No. 50 (resolving Pls.' Mot. Compel Def. Mayflower, Reqs. ## 1, 17, Interrogs. ## 1, 3; Pls.' Mot. Compel Def. Lunil, Reqs. ## 1, 13, Interrog. # 1; Pls.' Mot. Compel Def. Argo, Reqs. ## 1–2, 5–11, 13–18, 20, 22–25).

there continue to be disputes requiring court resolution. This memorandum provides that explanation.

One of the most important, but apparently least understood or followed, of the discovery rules is Fed.R.Civ.P. 26(g), enacted in 1983. The rule requires that every discovery disclosure, request, response or objection must be signed by at least one attorney of record, or the client, if unrepresented. Fed.R.Civ.P. 26(g)(1). The signature "certifies that to the best of the person's knowledge, information, and belief *formed after a reasonable inquiry*," the disclosure is complete and correct, and that the discovery request, response or objection is: (a) consistent with the rules of procedure and warranted by existing law (or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law); (b) is not interposed for any improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); and (c) is neither unreasonable nor unduly burdensome or expensive, (considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action). Fed.R.Civ.P. 26(g)(1)(A), (B)(i)-(iii) (emphasis added). If a lawyer or party makes a Rule 26(g) certification that violates the rule, without substantial justification, the court (on motion, or *sua sponte*) must impose an appropriate sanction, which may include an order to pay reasonable expenses and attorney's fees, caused by the violation. Fed.R.Civ.P. 26(g)(3).

■ The Advisory Committee's Notes to Rule 26(g) significantly flesh it out:

Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a *responsible manner* that is consistent with the *spirit and purposes* of Rules 26 through 37. In addition, Rule 26(g) is *designed to curb discovery abuse* by explicitly encouraging the imposition of sanctions. The subdivision provides a *deterrent* to both *excessive discovery* and *evasion* by imposing a certification requirement that obliges each attorney to *stop and think about the legitimacy of a discovery request, a response thereto, or an objection....*

If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to *act responsibly and avoid abuse.* With this in mind, Rule 26(g), which parallels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection....

Although the *certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection,* it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into *the factual basis* of his response, request, or objection.

The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11....

....

Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision. Sanctions to deter discovery abuse would be more effective if they were diligently applied "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."

Fed.R.Civ.P. 26(g) advisory committee's notes to the 1983 amendments (emphasis added) (citations omitted). Rule 26(g) and its commentary provide many important "take away points" that ought to, but unfortunately do not, regulate the way discovery is conducted. First, the rule is intended to impose an "affirmative duty" on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent "with the spirit and purposes" of the discovery rules, which are contained in Rules 26 through 37. *Id.* It cannot seriously be disputed that compliance with the "spirit and purposes" of these discovery rules requires cooperation by counsel to identify and

fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation. Counsel cannot "behave responsively" during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation.

Second, the rule is intended to curb discovery abuse by requiring the court to impose sanctions if it is violated, absent "substantial justification," and those sanctions are intended to both penalize the noncompliant lawyer or unrepresented client, and to deter others from noncompliance. Fed.R.Civ.P. 26(g)(3). As the Advisory Committee's Notes state, "Because of the asserted reluctance to impose sanctions on attorneys who abuse the discovery rules, Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it. This authority derives from Rule 37, 28 U.S.C. § 1927, and the court's inherent authority." Fed.R.Civ.P. 26(g) advisory committee's notes to the 1983 amendments (internal citations omitted).

Third, the rule aspires to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party. Despite the requirements of the rule, however, the reality appears to be that with respect to certain discovery, principally interrogatories and document production requests, lawyers customarily serve requests that are far broader, more redundant and burdensome than necessary to obtain sufficient facts to enable them to resolve the case through motion, settlement or trial. The rationalization for this behavior is that the party propounding Rule 33 and 34 discovery does not know enough information to more narrowly tailor them, but this would not be so if lawyers approached discovery responsibly, as the rule mandates, and met and conferred before initiating discovery, and simply discussed what the amount in controversy is, and how much, what type, and in what sequence, discovery should be conducted so that its cost—to all parties—is proportional to what is at stake in the litigation. The requirement of discovery being proportional to what is at issue is clearly stated at Rule 26(g)(1)(B)(iii) (lawyer's signature on a discovery request certifies that it is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"), as well as Rule 26(b)(2)(C)(i)-(iii) (court, on motion or on its own, must limit the scope of discovery if the discovery sought is unreasonably cumulative or duplicative, can be obtained from a more convenient source, could have been previously obtained by the party seeking the discovery or the burden or expense of the proposed discovery outweighs its likely benefit).

Similarly, Rule 26(g) also was enacted over twenty-five years ago to bring an end to the equally abusive practice of objecting to discovery requests reflexively—but not reflectively—and without a factual basis. The rule and its commentary are starkly clear: an objection to requested discovery may not be made until after a lawyer has "paused and consider[ed]" whether, based on a "reasonable inquiry," there is a "factual basis [for the] ... objection." Fed.R.Civ.P. 26(g) advisory committee's notes to the 1983 amendments. Yet, as in this case, boilerplate objections that a request for discovery is "overboard and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence," Pls.' Mot. Compel Def. Mayflower 3, Req. # 2, persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts. *See, e.g., A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 188 (C.D.Cal.2006); *Hall,* 231 F.R.D. at 470; *Wagner v. Dryvit Sys. Inc.,* 208 F.R.D. 606, 610 (D.Neb.2001) (citing *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 296–97 (E.D.Pa.1980)); *Thompson v. HUD,* 199 F.R.D. 168, 173 (D.Md.2001); *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 38 (D.Md.2000) (citing *Tucker v. Ohtsu Tire & Rubber Co.,* 191 F.R.D. 495, 498 (D.Md. 2000) (citations omitted); *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994); *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,* 136 F.R.D. 179, 182–83 (E.D.Ca.1991); *Willemijn Houdster-*

*maatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1439–40 (D.Del.1989)); *Momah v. Albert Einstein Med. Ctr.,* 164 F.R.D. 412, 417 (E.D.Pa.1996); *Obiajulu v. City of Rochester, Dept. of Law,* 166 F.R.D. 293, 295 (W.D.N.Y.1996); *Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1102 (D.N.J.1996).

It would be difficult to dispute the notion that the very act of making such boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver. Fed R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also Beverly v. Depuy Orthopaedics, Inc.,* No. 3:07–CV–137 AS, 2008 WL 45357, at *2 (N.D.Ind.2008) ("An underdeveloped argument, or argument not raised at all, is a waived argument."); *DL v. District of Columbia,* 251 F.R.D. 38, 43 (D.D.C.2008) ("When faced with general objections, the applicability of which to specific document requests is not explained further, '[t]his Court will not raise objections for [the responding party],' but instead will 'overrule[ ] [the responding party's] objection[s] on those grounds.'") (quoting *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.,* 242 F.R.D. 1, 12 (D.D.C.2007)); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535, 538 (D.C.Kan.2006) ("The Court … holds that a general objection which objects to a discovery request 'to the extent' that it asks the responding party to provide certain categories of documents or information is tantamount to asserting no objection at all. In other words, such a general objection does not preserve the asserted challenge to production."); *Hall,* 231 F.R.D. at 473–74 (objections to Rule 34 document production requests must be stated with particularity or are waived); *Swackhammer v. Sprint Corp. PCS,* 225 F.R.D. 658, 660–61 (D.Kan.2004) ("This Court has on several occasions disap-

proved of the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery. This Court has characterized these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or [has] declined to consider them as objections.") (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 666–67 (D.Kan.2004) (internal quotations and citations omitted)).

The failure to engage in discovery as required by Rule 26(g) is one reason why the cost of discovery is so widely criticized as being excessive—to the point of pricing litigants out of court. *See, e.g.,* Am. Coll. of Trial Lawyers & Inst. for the Advancement of the Am. Legal Sys., *Interim Report on the Joint Project of the American College of Trial Lawyers Task Force on Discovery and the Institute for the Advancement of the American Legal System* 3 (2008) ("Although the civil justice system is not broken, it is in serious need of repair. The survey shows that the system is not working; it takes too long and costs too much. Deserving cases are not brought because the cost of pursuing them fails a rational cost-benefit test, while meritless cases, especially smaller cases, are being settled rather than being tried because it costs too much to litigate them."); Gregory P. Joseph, *Trial Balloon: Federal Litigation–Where Did It Go Off Track?,* Litig., Summer 2008, at 62 (observing that discovery costs, particularly related to ESI discovery, is partly responsible for making federal litigation "procedurally more complex, risky to prosecute, and very expensive," causing litigants to avoid litigating in federal court); The Sedona Conference, *The Sedona Conference Cooperation Proclamation* 1 (2008) [hereinafter *Cooperation Proclamation*], *available at* http://www.thesedonaconference. org/content/miscFiles/cooperation_ Proclamation_Press.pdf ("The costs associated with adversarial conduct in pre-trial discovery have become a serious burden to the

American judicial system. This burden rises significantly in discovery of electronically stored information ("ESI"). In addition to rising monetary costs, courts have seen escalating motion practice, overreaching, obstruction, and extensive, but unproductive discovery disputes—in some cases precluding adjudication on the merits altogether . . . ."); Kent D. Syverud, *ADR and the Decline of the American Civil Jury*, 44 UCLA L.Rev. 1935, 1942 (1997) ("Our civil process before and during trial, in state and federal courts, is a masterpiece of complexity that dazzles in its details—in discovery, in the use of experts, in the preparation and presentation of evidence, in the selection of the factfinder and the choreography of the trial. But few litigants or courts can afford it.").

Comparing these recent lamentations about the costs of civil litigation to those voiced eighteen years ago when the Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471 *et seq.*, was passed, and comprehensive changes to the discovery rules enacted, reflects that little has changed, despite concerted efforts to do so:

> Perhaps the greatest driving force in litigation today is discovery. Discovery abuse is a principal cause of high litigation transaction costs. Indeed, in far too many cases, economics—and not the merits— govern discovery decisions. Litigants of moderate means are often deterred through discovery from vindicating claims or defenses, and the litigation process all too often becomes a war of attrition for all parties . . . .

. . . .

> Excessive and abusive discovery has been recognized as a serious problem for some time. More than 10 years ago, a study of Federal trial judges in two district courts found that they perceived "unnecessary, expensive, overburdening discovery as a substantial threat to the efficient and just functioning of the federal trial system for civil litigation." In 1980, a study of lawyers in Chicago found that 49 percent of those practicing in Federal courts believe that "overdiscovery" is a major abuse of the discovery process.

S.Rep. No. 101–650, at 20–21, *as reprinted in* 1990 U.S.C.C.A.N. 6823–24 (internal citations omitted).

Rule 26(g) charges those responsible for the success or failure of pretrial discovery— the trial judge and the lawyers for the adverse parties—with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

The apparent ineffectiveness of Rule 26(g) in changing the way discovery is in fact practiced often is excused by arguing that the cooperation that judges expect during discovery [3] is unrealistic because it is at odds

---

**3.** Courts repeatedly have noted the need for attorneys to work cooperatively to conduct discovery, and sanctioned lawyers and parties for failing to do so. *See, e.g., Board of Regents of the Univ. of Nebraska v. BASF Corp.*, 2007 WL 3342423, at *5 (D.Neb. Nov. 5, 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable."); *Network Computing Servs. Corp. v. CISCO Sys., Inc.*, 223 F.R.D. 392 (D.S.C.2004). In *Network Computing Servs.*, the court discussed problems caused by failures of counsel and parties to approach discovery more cooperatively and professionally, stating, "The discovery beast has yet to be tamed." 223 F.R.D. at 395 (quoting Patrick E. Higginbotham, *So Why Do We Call Them Trial Courts?*, 55 SMU

L.Rev. 1405, 1417 (2002)), and taking note of United States District Judge Wayne Alley's caustic observation that "[i]f there is a hell to which disputatious, uncivil, vituperative lawyers go, let it be one in which the damned are eternally locked in discovery disputes with other lawyers of equally repugnant attributes." *Id.* (quoting *Krueger v. Pelican Prod. Corp.*, C/A No. 87–2385–A, slip op. (W.D.Okla. Feb. 24, 1989)). The district court judge affirmed the recommendation of a magistrate judge that sanctions for discovery abuse were appropriate, and instead of imposing a monetary sanction, ordered that the jury would be informed of the misconduct. *Id.* at 395–401. *See also, e.g., Buss v. Western Airlines, Inc.*, 738 F.2d 1053, 1053–54 (9th Cir.1984) ("The voluminous file in this case reveals that a vast amount of lawyer time on both sides was expended in largely unnecessary paper shuffling as the parties

with the demands of the adversary system, within which the discovery process operates. But this is just not so. The adversary system has been aptly summarized as follows:

> The central precept of the adversary process is that out of the sharp clash of proofs presented by adversaries in a highly structured forensic setting is most likely to come the information upon which a neutral and passive decision maker can base the resolution of a litigated dispute acceptable to both the parties and society. This formulation is advantageous not only because it expresses the overarching adversarial concept, but also because it identifies the method to be utilized in adjudication (the sharp clash of proofs in a highly structured setting), the actors essential to the process (two adversaries and a decision maker), the nature of their functions (presentation of proofs and adjudication of disputes, respectively), and the goal of the entire endeavor (the resolution of disputes in a manner acceptable to the parties and to society).

Stephen Landsman, A.B.A. Section of Litigation, *Readings on Adversarial Justice: The American Approach to Adjudication* 2 (1988). However central the adversary system is to our way of formal dispute resolution, there is nothing inherent in it that precludes cooperation between the parties and their attorneys during the litigation process to achieve orderly and cost effective discovery of the competing facts on which the system depends. In fact, no less a proponent of the adversary system than Professor Lon L. Fuller[4] observed:

> Thus, partisan advocacy is a form of public service so long as it aids the process of adjudication; it ceases to be when it hinders that process, when it misleads, distorts and obfuscates, when it renders the task of the deciding tribunal not easier, but more difficult.
>
> . . . .
>
> The lawyer's highest loyalty is at the same time the most tangible. It is loyalty that runs, not to persons, but to proce-

battled over discovery and preliminary matters. . . . It is not the purpose of this decision to assess fault. The trial judge, however, was not at fault. A judge with a caseload to manage must depend upon counsel meeting each other and the court halfway in moving a case toward trial."); *Flanagan v. Benicia Unified Sch. Dist.*, 2008 WL 2073952, at *10 (E.D.Cal.2008) ("The abusiveness of plaintiff's discovery responses indicate a lack of cooperative spirit. . . . [P]laintiff's wilful disregard of the Federal Rules, and her lack of communication and cooperation with defense counsel in regard to all discovery, undermine the judicial process plaintiff herself has invoked."); *Marion v. State Farm Fire and Casualty Co.*, 2008 WL 723976, at *3–4 (S.D.Miss. Mar. 17, 2008) ("[T]he gravest 'error' committed by the Magistrate [Judge] was thinking that 'the parties [could] meet and confer to discuss any outstanding discovery requests,' because after this 'meet and confer' it was 'clear that the parties had done little to resolve their perceived differences on document production.'... This Court demands the mutual cooperation of the parties. It hopes that some agreement can be reached. . . . Neither [the Magistrate Judge] nor this Court will hesitate to impose sanctions on any one—party or counsel or both—who engages in any conduct that causes unnecessary delay or needless increase in the costs of litigation." (citing Fed.R.Civ.P. 26(g))); *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 45 (1st Cir.2007) (sustaining certain sanctions imposed by district court for discovery violations and noting with

disapproval the lack of cooperation and responsiveness of defendants to plaintiff's attempts to comply with the discovery schedule); *In re Spoonemore*, 370 B.R. 833, 844 (Bkrtcy.D.Kan. 2007) ("Discovery should not be a sporting contest or a test of wills, particularly in a bankruptcy case where the parties' resources are limited and the dollar value of the stakes is often low. When a party and its counsel are as intransigent and uncooperative in discovery as [the parties] have been in this matter, the Court has no choice but to impose sanctions that, hopefully, emphasize that the conduct sanctioned is both unprofessional and unacceptable."); *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 306 (7th Cir.1996) ("This Court cannot determine where the fault in this latest breakdown of attempted discovery lies. The Court is therefore assuming that both attorneys have failed in this regard. This Court is not happy with the progress, or should say lack of progress, relating to getting this case ready for trial. It is apparent that the attorneys involved in this case do not like each other, do not get along, and will not cooperate in the discovery process. The people who suffer when this happens are the parties.").

4. Professor Fuller, 1902–1978, was a celebrated professor at Harvard Law School who wrote extensively on jurisprudence, including the importance of the adversary system. His publications include the influential article *The Forms and Limits of Adjudication*, 92 Harv. L.Rev. 353 (1978).

dures and institutions. The lawyer's role imposes on him a trusteeship for the integrity of those fundamental processes of government and self-government upon which the successful functioning of our society depends.

. . . A lawyer recreant to his responsibilities can so disrupt the hearing of a cause as to undermine those rational foundations without which an adversary proceeding loses its meaning and its justification. Everywhere democratic and constitutional government is tragically dependant on voluntary and understanding co-operation in the maintenance of its fundamental processes and forms.

It is the lawyer's duty to preserve and advance this indispensable co-operation by keeping alive the willingness to engage in it and by imparting the understanding necessary to give it direction and effectiveness. . . .

. . . It is chiefly for the lawyer that the term "due process" takes on tangible meaning, for whom it indicates what is allowable and what is not, who realizes what a ruinous cost is incurred when its demands are disregarded. For the lawyer the insidious dangers contained in the notion that "the end justifies the means" is not a matter of abstract philosophic conviction, but of direct professional experience.

Lon L. Fuller & John D. Randall, *Professional Responsibility: Report of the Joint Conference*, 44 A.B.A. J. 1159, 1162, 1216 (1958). A lawyer who seeks excessive discovery given what is at stake in the litigation, or who makes boilerplate objections to discovery requests without particularizing their basis, or who is evasive or incomplete in responding to discovery, or pursues discovery in order to make the cost for his or her adversary so great that the case settles to avoid the transaction costs, or who delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is, as Professor Fuller observes, hindering the adjudication process, and making the task of the "deciding tribunal not easier, but more difficult," and violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve. Thus, rules of procedure,[5] ethics [6] and even

---

**5.** *See, e.g.*, Fed.R.Civ.P. 26(f) (requiring parties and their counsel to confer to "consider the nature and basis of their claims and defenses," the possibility of settlement and to develop and agree on a proposed discovery plan to submit to the court); Fed.R.Civ.P. 26(g) (requiring that discovery not be initiated, responded to, or objections made unless there first has been a reasonable inquiry, and the discovery, response or objection is founded in law, not interposed for an improper purpose, and neither unreasonable nor unduly burdensome); Fed.R.Civ.P. 26(c)(1), 37(a)(1) (prohibiting the filing of discovery motions without first certifying that the moving party has conferred in good faith with the adverse party in an effort to resolve the dispute without court action).

**6.** *See, e.g.*, Model Rules of Prof'l Conduct R. 3.4(d) (2007) ("[A lawyer shall not,] in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]"); Model Rules of Prof'l Conduct R. 3.4 cmt. [1] (2007) ("The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, *obstructive tactics in discovery procedure*, and the like.") (emphasis added). *See also* Restatement (Third) of the Law Governing Lawyers: Frivolous Advocacy § 110(3) (2000) ("A lawyer may not make a frivolous discovery request, fail to make a reasonably diligent effort to comply with a proper discovery request of another party, or intentionally fail otherwise to comply with applicable procedural requirements concerning discovery."); Restatement (Third) of the Law Governing Lawyers ch. 7, topic 2, introductory n. (2000) ("Advocates are guided primarily by the goal of advancing their individual clients' interests. They are expected to marshal evidence and legal arguments in support of the positions of their respective clients and to cross-examine and otherwise test the evidence and positions of opposing parties, without personal responsibility for the outcome of the proceeding. However, there are limitations on an advocate's forensic freedom. In addition to the general requirement of complying with legal requirements and rulings of tribunals, a lawyer is subject to the constraints described in this Topic concerning frivolous litigation [which includes prohibitions against frivolous advocacy and conduct during discovery].") (internal citations omitted).

statutes [7] make clear that there are limits to how the adversary system may operate during discovery.

Although judges, scholars, commentators and lawyers themselves long have recognized the problems associated with abusive discovery, what has been missing is a thoughtful means to engage all the stakeholders in the litigation process—lawyers, judges and the public at large—and provide them with the encouragement, means and incentive to approach discovery in a different way. The Sedona Conference, a non-profit, educational research institute [8] best known for its *Best Practices Recommendations and Principles for Addressing Electronic Document Production,*[9] recently issued a *Cooperation Proclamation* to announce the launching of "a national drive to promote open and forthright information sharing, dialogue (internal and external), training, and the development of practical tools to facilitate cooperative, collaborative, transparent discovery." *Cooperation Proclamation, supra,* at 1. To accomplish this laudable goal, the Sedona Conference proposes to develop "a detailed understanding and full articulation of the issues and changes needed to obtain cooperative fact-

finding," as well as "[d]eveloping and distributing practical 'toolkits' to train and support lawyers, judges, other professionals, and students in techniques of discovery cooperation, collaboration, and transparency." *Id.* at 3. If these goals are achieved, the benefits will be profound. In the meantime, however, the present dispute evidences the need for clearer guidance how to comply with the requirements of Rules 26(b)(2)(C) and 26(g) in order to ensure that the Plaintiffs obtain appropriate discovery to support their claims, and the Defendants are not unduly burdened by discovery demands that are disproportionate to the issues in this case.

As previously noted, Plaintiffs served Rule 33 interrogatories and Rule 34 document production requests on each of the Defendants. Initially, there was communication between counsel, as well as some degree of cooperation, as Plaintiffs agreed to give the Defendants an extension of time to answer this discovery. When they did answer, however, Defendants Mayflower, Lunil and Mehta (all represented by the same counsel) objected to a number of Plaintiffs' document production requests by making boilerplate, non-particularized objections.[10] Defendant

7. *See, e.g.,* 28 U.S.C. § 1927 (2008) ("Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs. expenses, and attorneys' fees reasonably incurred because of such conduct.").

8. The Sedona Conference, http://www.thesedona conference.org/content/faq (last visited Oct. 8, 2008).

9. The Sedona Conference, *Best Practices Recommendations and Principles for Addressing Electronic Document Production* (rev.2004), *available at* http://www.thesedonaconference.org/content/miscFiles/SedonaPrinciples200401.pdf.

10. *See, e.g.,* Pls.' Mot. Compel Def. Mayflower 2–8, Reqs. ## 1–7, 15–17; Pls.' Mot. Compel Def. Lunil 2–7, Reqs. ##1–4, 12, 17, 19; Pls.' Mot. Compel Def. Mehta 2, 4, Reqs. ## 1–2. Two examples of the Plaintiffs' requests for production of documents, and Defendant Mayflower's responses, are as follows:

DOCUMENT REQUESTS

1. The contract or contracts between each of the Mayflower entities and Lunil Services, Agency, L.L.C. ("Lunil") reflecting Lunil's agreement to provide plant production workers for the Mayflower laundry for all the years

in which the agreement or agreements between the Mayflower entities and Lunil were in effect.

RESPONSE: Objection. This request is overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of material admissible in evidence at the trial of this matter in that it contains no time limitation whatsoever, and clearly seeks documents outside of the limitations period governing this action. Subject to and without waiving this objection, see attached agreement between Lunil Services Agency, LLC and Mayflower Healthcare Textile Services, LLC.

4. Any and all correspondence, e-mail, and/or notes of oral conversations, and any other recordings, including documentation of payments that support the formation of a contract between Mayflower and Argo whereby Agro [sic] agreed to provide plant production workers for the Mayflower laundry plant, and any and all records that reflect the terms of that agreement.

RESPONSE: Subject to and without waiving this objection, any responsive non-privileged documents, in [sic] any exist, ill [sic] be produced at a time mutually acceptable to the parties.

Pls.' Mot. Compel Def. Mayflower 2–4, Reqs. ## 1, 4.

Argo also relied on this practice when objecting to one of the Plaintiffs' interrogatories.[11] Rule 33(b)(4) requires that "the grounds for objecting to an interrogatory must be stated with specificity" and cautions that "any ground not stated in a timely objection is waived, unless the court, for good cause, excuses the failure"; therefore, the boilerplate objection to Plaintiffs' interrogatory waived any legitimate objection Defendant Argo may have had. *Jayne H. Lee, Inc.,* 173 F.R.D. at 655. The same is true for the boilerplate objections to Plaintiffs' document production requests. *Hall,* 231 F.R.D. at 273–74. The failure to particularize these objections as required leads to one of two conclusions: either the Defendants lacked a factual basis to make the objections that they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required. Neither alternative helps the Defendants' position, and either would justify a ruling requiring that the Defendants provide the requested discovery regardless of cost or burden, because proper grounds for objecting have not been established.

■ However, Rule 26(b)(2)(C) imposes an obligation on the Court, *sua sponte,* to:

[L]imit the frequency or extent of discovery otherwise allowed by [the] rules ... if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the impor-

tance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii). I noted during the hearing that I had concerns that the discovery sought by the Plaintiffs might be excessive or overly burdensome, given the nature of this FLSA and wage and hour case, the few number of named Plaintiffs and the relatively modest amounts of wages claimed for each. Because the record before me lacked facts to enable me to make a determination of overbreadth or burden under Rule 26(b)(2)(C), I ordered counsel to meet and confer in good faith and do the following. First, I asked Plaintiffs and Defendants each to estimate the likely range of provable damages that foreseeably could be awarded if Plaintiffs prevail at trial. In doing so, I suggested that the Plaintiffs assume for purposes of this analysis that their pending motion to certify a FLSA collective action would be granted, because doing so would allow the parties to gauge the "worst case" outcome Defendants could face. I then ordered that counsel for Plaintiffs and Defendants compare these estimates and attempt to identify a foreseeable range of damages, from zero if Plaintiffs do not prevail, to the largest award they likely could prove if they succeed. I also asked Plaintiffs' counsel to estimate their attorneys' fees. While admittedly a rough estimate, this range is useful for determining what the "amount in controversy" is in the case, and what is "at stake" for purposes of Rule 26(b)(2)(C)'s proportionality analysis. The goal is to attempt to quantify a workable "discovery budget" that is proportional to what is at issue in the case.

Second, I ordered Plaintiffs' counsel and Defendants' counsel to discuss the amount and type of discovery already provided, and then discuss the additional discovery still sought by Plaintiffs, in order to evaluate the Rule 26(b)(2)(C) factors, to determine whether Plaintiffs' legitimate additional discovery needs could be fulfilled from non-duplicative, more convenient, less burdensome, or less expensive sources than those currently sought by the Plaintiffs. I further instructed Defendants' counsel that during this portion of the discussion, the burden was on the

11. Pls.' Mot. Compel Def. Argo 10, Interrog. # 3.

Defendants to provide a particularized factual basis to support any claims of excessive burden or expense.

I then advised counsel that in their discussion they should attempt to reach an agreement, in full or at least partially, about what additional discovery (and from what sources) should be provided by Defendants to Plaintiffs. In doing so, I suggested that they consider "phased discovery," so that the most promising, but least burdensome or expensive sources of information could be produced initially, which would enable Plaintiffs to re-evaluate their needs depending on the information already provided.

Finally, I advised counsel that when they had completed their discussion, they were to provide me with a status report identifying any unresolved issues, and if there were any, I gave them a format to use to present them to me in a fashion that would enable me to rule on them expeditiously.

It is apparent that the process outlined above requires that counsel cooperate and communicate, and I note that had these steps been taken by counsel at the start of discovery, most, if not all, of the disputes could have been resolved without involving the court. It also is apparent that there is nothing at all about the cooperation needed to evaluate the discovery outlined above that requires the parties to abandon meritorious arguments they may have, or even to commit to resolving all disagreements on their own. Further, it is in the interests of each of the parties to engage in this process cooperatively. For the Defendants, doing so will almost certainly result in having to produce less discovery, at lower cost. For the Plaintiffs, cooperation will almost certainly result in getting helpful information more quickly, and both Plaintiffs and Defendants are better off if they can avoid the costs associated with the voluminous filings submitted to the court in connection with this dispute. Finally, it is obvious that if undertaken in the spirit required by the discovery rules, particularly Rules 26(b)(2)(C) and 26(g), the adversary system will be fully engaged, as counsel will be able to advocate their clients' positions as relevant to the factors the rules establish, and if unable to reach a full agreement, will be able to bring their dispute back to the court for a prompt resolution. In fact, the cooperation that is necessary for this process to take place enhances the legitimate goals of the adversary system, by facilitating discovery of the facts needed to support the claims and defenses that have been raised, at a lesser cost, and expediting the time when the case may be resolved on its merits, or settled. This clearly is advantageous to both Plaintiffs and Defendants.