Rose Ure MEZU, Plaintiff,

v.

MORGAN STATE UNIVERSITY, et al., Defendants.

No. WMN–09–2855.

United States District Court, D. Maryland, Northern Division.

Oct. 22, 2010.

Chinyere Valerie Ibe, Law Offices of C Valerie Ibe a Professional Law Corporation, West Hills, CA, John Michael Singleton, Williams, Willig, Davidson & Singleton, Owings Mills, MD, for Plaintiff.

Sally Lotz Swann, State of Maryland Office of the Attorney General, Baltimore, MD, for Defendants.

1. Defendant Morgan State University is the only defendant remaining in the case. *See* March 18, 2010 Order. ECF No. 25.

2. Plaintiff erroneously filed the same Motion to Compel on July 26, 2010, ECF No. 45, instead of only serving it on Defendant. Defendant moved to strike the motion, ECF No. 46; Plaintiff acknowledged its error in response, ECF No. 50,

## MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses (1) Plaintiff Rose Ure Mezu's Motion to Compel Discovery Responses, ECF No. 54; Defendant Morgan State University's [1] Motion to Strike Plaintiff's Second [2] Motion to Compel, ECF No. 55; Plaintiff's Response to Defendant's Motion to Strike, ECF No. 57; and Defendant's Reply, ECF No. 58; (2) Plaintiff's Objections to Subpoena Under Fed.R.Civ.P. 45(c)(2)(B) (Plaintiff's Motion to Quash Subpoena), ECF No. 59; and Defendant's Response in Opposition to Plaintiff's Motion to Quash Subpoena, ECF No. 62; (3) Defendant's Motion for Sanction of Dismissal under Fed.R.Civ.P. 41 or Alternatively for Sanctions under Fed.R.Civ.P. 37, ECF No. 68; and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Sanctions, ECF No. 73; (4) Plaintiff's Motion for One Month Extension of Time to Complete Discovery Following the Resolution of Plaintiff's 8–13–2010 Motion to Compel, ECF No. 69; (5) Defendant's Motion to Revoke the *Pro Hac Vice* Admission of Plaintiff's Counsel, ECF No. 71, and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion Seeking Revocation of Plaintiff's Counsel's Admission *Pro Hac Vice*, ECF No. 75.[3] Because the flurry of discovery motions suggested that communication and cooperation between counsel had deteriorated to a point that discovery was not proceeding as expected in cases filed in this Court, I issued a paperless order on September 21, 2010, instructing the parties not to file any additional discovery motions until I resolved the pending motions. ECF No. 74. I find that a hearing is unnecessary on these discovery disputes. *See* Loc. R. 105.6. For the rea-

and the Court granted Defendant's motion to strike, ECF No. 51.

3. On September 2, 2010, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Nickerson referred this case to me to resolve discovery disputes and related scheduling matters. Docket Entry.

sons stated herein, the parties' motions are DENIED WITHOUT PREJUDICE. This Memorandum and Order disposes of ECF Nos. 54, 55, 57, 58, 59, 62, 68, 73, 69, 71, and 75.

As will be explained below, the discovery that has been conducted in this case has been done in substantial disregard of the rules of procedure, local rules, guidelines, and decisional authority that govern how this Court expects discovery to be conducted, and this suggests that the parties are using the process for inappropriate purposes. After cataloging the discovery violations to date, this Order sets out how discovery will take place henceforth. The parties and counsel are forewarned that violations of this Order and/or further violations of the Federal Rules of Civil Procedure and the Local Rules will result in sanctions that may include case-dispositive sanctions under Fed.R.Civ.P. 37(b)(2)(A)(v)-(vii), including contempt of court.

## I. Discovery Conflicts Generally and the Duty to Cooperate

This case represents Plaintiff's third attempt to sue her employer.[4] The filings in this case suggest that there is no love lost between Plaintiff and Defendant or between their attorneys. With regard to the substantive issues in this case, Plaintiff alleges that Defendant violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, by denying her FMLA leave to care for her daughter following her daughter's brain surgery. Am. Compl. ¶¶ 94–100, ECF No. 42. Additionally, Plaintiff alleges that Defendant

willfully denied Plaintiff FMLA leave and withheld her salary and benefits for more than six weeks as retaliation because Plaintiff exercised her rights under the FMLA by applying for FMLA leave in August 2009. *Id.* ¶¶ 101–08. Plaintiff also alleges that when Defendant (a) denied Plaintiff FMLA leave to care for her daughter in the summer of 2009, *id.* ¶¶ 61–76, (b) marked Plaintiff as "absent" instead of granting her bereavement leave in Fall 2008 for her mother's funeral, *id.* ¶¶ 38–60, and (c) assigned Plaintiff to "undergraduate beginners' courses . . . thereby virtually removing her without cause or justification as a Graduate Faculty," it was in retaliation for Plaintiff's previous exercise of her rights under Title VII of the Civil Rights Act of 1964, *id.* ¶¶ 84–93.[5] Notwithstanding the longstanding conflicts between Plaintiff and Defendant that date back for years and involve events that underlie Plaintiff's two unsuccessful prior attempts to sue Defendant, discovery in this case must be tailored to address the specific allegations in the pending case, not the claims that have been dismissed, nor the claims that formed the basis for Plaintiff's prior lawsuits against Defendant. *See* Fed.R.Civ.P. 26(b)(1).

■ Thus far, counsel for both Plaintiff and Defendant have exhibited a disturbing lack of knowledge of, or disregard for, the Federal Rules of Civil Procedure and Local Rules of this Court, including the Discovery Guidelines for the United States District Court for the District of Maryland, D. Md. Loc. R.App. A (Dec. 1, 2009), http://www.mdd.uscourts.gov/localrules/ localrulesfinal-july2010.pdf. This is despite the fact that

---

**4.** *See Mezu v. Dolan,* Case No. JFM–02–3713; *Mezu v. Morgan State Univ.,* Case No. WDQ–08–1867. Neither of these cases succeeded.

**5.** In Title VII cases, plaintiffs may seek to recover both punitive and compensatory damages. 42 U.S.C. § 1981a(1). However, such damages are limited, based on the size of the employer; a plaintiff may not recover more than $300,000 in compensatory and punitive damages from an employer of more than 500 employees for twenty or more calendar weeks in the current or preceding calendar year. *Id.* § 1981(b)(3)(D). In FMLA cases, an employee may recover damages equivalent to "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," or, if the

employee has not been denied or lost such compensation, the employee may recover "actual monetary losses sustained by the employee as a direct result of the violation . . . up to a sum equal to 12 weeks . . . of wages or salary for the employee." 29 U.S.C. § 2617(a)(1)(A)(i). The employee may also recover interest, *id.* § 2617(a)(1)(A)(ii), and "an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii)," *id.* § 2617(a)(1)(A)(iii). Assessing the potential damages that may be recovered if Plaintiff prevails in her claims is quite important in determining the amount and nature of discovery that is appropriate. *See* Fed.R.Civ.P. 26(b)(2)(C), (g)(1)(B)(iii).

"Counsel are expected to have read the Federal Rules of Civil Procedure, Local Rules of the Court, these Guidelines, and, with respect to discovery of electronically stored information ('ESI'), the Suggested Protocol for Discovery of ESI, posted on the Court's website, www.mdd.uscourts.gov." Discovery Guideline 1.b. The discovery violations by both attorneys are numerous and vividly demonstrate how discovery should not be practiced.[6] These violations and counsel's overall failure to cooperate have lead to the filing of a barrage of motions and countermotions. The frequency and nature of the disputes that have arisen thus far suggest that this case has become a grudge match, with discovery being interposed as much to cause burden, delay, and expense as to obtain information, and the parties and their attorneys have attempted to use this Court as a trampoline on which to exercise their mutual animosity. Abusing discovery procedures as they have done is a clear violation of Fed. R.Civ.P. 26(g)(1), which provides that an attorney's signature on a discovery request, objection, or response, or disclosure under Rule 26(a)(1) or (a)(3)

> certifies that to the best of the person's knowledge, information, and belief ... a discovery request, response, or objection ... is ... not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and ... neither unreasonably nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Moreover, although the parties have exchanged communications with regard to discovery, the overtones of animosity belie any pretext of meeting the affirmative duty to cooperate, as stated in *Mancia v. Mayflower Textile Services Co.*, 253 F.R.D. 354, 357–58 (D.Md.2008) ("[T]he 'spirit and purposes' of these discovery rules requires cooperation by counsel to identify and fulfill legitimate dis-

covery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation. Counsel cannot 'behave responsively' during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation") and Discovery Guideline 1.a ("The parties and counsel have an obligation to cooperate in planning and conducting discovery to tailor the discovery to ensure that it meets these objectives. Counsel have a duty to confer early and throughout the case as needed to ensure that discovery is planned and conducted consistent with these requirements and, where necessary, make adjustments and modifications in discovery as needed.").

Preliminarily, Defendant improperly moved to strike Plaintiff's Motion to Compel, claiming that Plaintiff failed to comply with Local Rule 104.8.b, which provides:

> Counsel are encouraged to confer with one another before or immediately after a motion to compel is served. If they are unable to resolve their disputes, counsel must hold the conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel.

According to Defendant, Plaintiff "did not meet the requirements of L.R. 104.8" because she filed her Motion to Compel "without adequately discussing and attempting to resolve the discovery disputes," Def.'s Mem. in Support of Def.'s Mot. to Strike 2, 3, ECF No. 55–1.

Contrary to Defendant's assertion, Plaintiff has demonstrated that she complied with Local Rule 104.8. On July 11, 2010, after Defendant's deadline to respond had passed and prior to serving her Motion to Compel on Defendant, Plaintiff contacted Defendant to request "a meet and confer telephone conference" in an attempt to resolve the dispute. Pl.'s Mot. to Compel Ex. 3, ECF No. 54–5. The parties conferred via telephone on July

---

**6.** Although not relevant to discovery, I note that initially Defendant failed to answer Plaintiff's Complaint, and the Clerk made an Entry of Default. *See* ECF No. 7 (Entry of Default). Thereafter, Defendant moved to dismiss, ECF No. 9, which motion the Court denied in part, ECF No. 25, and moved to set aside the Entry of Default, ECF No. 14, which motion the Court granted, ECF No. 25. Ultimately, Defendant filed an Answer. ECF No. 29.

14, 2010. *Id.* Because the disputes remained unresolved, Plaintiff served her motion on Defendant on July 26, 2010. *Id.* Ex. A, ECF No. 54–2. Then, after serving the motion, Plaintiff's counsel sent a letter and email on August 2, 2010, asking Defense counsel to "please specify" if she was "changing [her] position on any of the issues that were raised" in Plaintiff's Motion to Compel. *Id.* Ex. 7, ECF No. 54–9. And, on August 5, 2010, Plaintiff's counsel emailed Defense counsel, stating that she "need[ed] to know" Defendant's "substantive response" to Plaintiff's motion, and asking when she would receive answers to interrogatories or the documents she requested. *Id.* From the record before me, it appears that Defendant did not bother to respond or otherwise further attempt to confer with Plaintiff. On August 10, 2010, when Defendant had not responded to Plaintiff's motion and the time for doing so had passed, *see* Loc. R. 104.8.a, Plaintiff asked Defense counsel via email and regular mail whether she was "willing to discuss what modifications to [her] position [she was] willing to make." Pl.'s Mot. to Compel Ex. 7. Defense counsel responded that she was "working on the response" and "preparing a privilege log," and that "some of the answers will be supplemented by reference to documents produced in discovery." *Id.* Plaintiff did not file her motion until August 13, 2010, in compliance with Local Rule 104.8. *See* Pl.'s Mot. to Compel 2. Defendant's submission, alleging Plaintiff's failure to comply with Local Rule 104.8 when, in fact, Plaintiff attempted to confer with Defendant no fewer than four times, but Defendant was generally unresponsive, raises doubts as to the candor of Defendant's counsel.

## II. Discovery Violations with Regard to Plaintiff's Interrogatories

■ Plaintiff served interrogatories on May 17, 2010, and requests for production of documents on May 19, 2010, and agreed to extend the time for Defendant to respond to both discovery requests until June 29, 2010. Pl.'s Mot. to Compel Ex. 1 & 3, ECF Nos. 54–3 & 54–5. Plaintiff posed twenty-five interrogatories, but a number of them had multiple subparts.[7] *E.g.*, Pl.'s Mot. to Compel Ex. 1, Interrog. No. 3 ("Please set forth the Plaintiff's hire date; positions with the Defendant; pay rate and/or salary in each position; time in each position; reasons for changes in positions throughout Plaintiff's employment; and supervisor's [sic] in each position. Please set forth also the corresponding pay rate and/or salary of similarly placed non Nigerian Faculty members of equal rank during the same time and the reason for the differences if any."); Interrogatory No. 7 ("Please set forth all reasons Morgan State University, the employer had for giving the Plaintiff FMLA Request forms which she filled out on November 18, 2008 when the Plaintiff clearly stated that she needed leave to go to Nigeria to bury her mother. Please set forth all reasons why on November 25, 2008 (after the Plaintiff had left for Nigeria) the Human Resources Director denied the Plaintiff's request for FMLA leave and asked her to apply for 'sick-bereavement' leave. Please indicate also whether her application for 'sick-bereavement' leave has been to date approved or denied. Please indicate who participated in that decision, their reasons at the time for taking the adverse employment action against the plaintiff. Please set forth all individuals (by name, position held at the time, and current position, if different) that participated in the decision making process to take the adverse employment action against the plaintiff.").

■ Fed.R.Civ.P. 33(a)(1) provides that "a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts.*" (Emphasis added.) "[A]n interrogatory containing subparts di-

---

7. Defendant also propounded interrogatories with multiple subparts, and in her responses, *Plaintiff objected that Interrogatories No. 2, 3, and 4 "contain[ed] more than one request."* Pl.'s Mot. to Quash Ex. 1, ECF No. 59–1. However, Defendant only propounded twelve interrogatories. In addition to the main question in each interrogatory, Interrogatory 2 had at most five subparts; Interrogatory 3 had at most three subparts; and Interrogatory 4 had at most three subparts. Twelve interrogatories and eleven subparts to which Plaintiff objected are a total of twenty-three questions. Therefore, Defendant did not propound more interrogatories than the twenty-five permitted under Rule 33(a)(1). *See* Fed.R.Civ.P. 33(a)(1).

rected at eliciting details concerning the common theme should be considered a single question," but "an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of limitation." 8A *Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Fed. Prac. & Proc.* § 2168.1 at 261 (2d ed.1994); *see Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, Discovery Problems and their Solutions* 16–22 (ABA 2d ed.2009). Put another way,

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related is to examine whether the first question is primary and subsequent questions are secondary to the primary question.... Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they ... may be related.

*Kendall v. GES Exposition Servs.,* 174 F.R.D. 684, 685–86 (D.Nev.1997).

Here, Plaintiff's multi-part interrogatories largely encompassed multiple questions. For example, Interrogatory No. 3 posed a question about the positions Plaintiff held at Morgan State University. Most of the other questions included in Interrogatory No. 3 could be seen as subparts, establishing her hire date, salary, and supervisors. The relationship between these questions and the question about why Plaintiff changed positions is, at best, attenuated. And, the final question as to the pay rates of other faculty members clearly is not secondary to, or more than tangentially related to, the earlier questions. Interrogatories such as No. 3 must be counted as two questions, if not more. Therefore, Plaintiff propounded more than twenty-five interrogatories, in violation of Fed.R.Civ.P. 33(a)(1).

■ On June 29, 2010, Defendant provided answers to interrogatories, but they were unsigned,[8] in violation of Fed.R.Civ.P. 26(g)(1), which requires that every discovery response or objection "be signed by at least one attorney of record in the attorney's own name." Moreover, Defendant provided incomplete answers. For example, in response to Plaintiff's six-part question posed in Interrogatory No. 3, Defendant only provided Plaintiff's positions and her start date and salary for each position. Rule 37(a)(4) requires complete and non-evasive discovery responses, answers (including answers to interrogatories and document production requests), and disclosures. Evasive or incomplete discovery responses, answers, or disclosures will be deemed to be a failure to respond, answer, or disclose. *Id.* Thus, in violation of Rule 33(b)(2), Defendant failed to respond to Plaintiff's interrogatories by the agreed-upon date when answers were due. Also, the record before me illustrates that Defense counsel failed to "make [a] good faith effort[ ] to respond to discovery requests within the time prescribed by th[e] rules," in violation of Discovery Guideline 9.a.

■ Further, Defendant filed boilerplate objections. *E.g.,* Pl.'s Mot. to Compel Ex. 2, Resp. to Interrog. No. 3, ECF No. 54–4 ("Defendant objects to the interrogatory because it is overly broad and requests information beyond the scope of the two counts remaining in the case and is not reasonably calculated to lead to the discovery of admissible evidence relevant to the two remaining counts in the case. Moreover, the request contains more than one request...."). Objections to discovery must be specific, non-boilerplate, and supported by particularized facts where necessary to demonstrate the basis for the objection. *Hall v. Sullivan,* 231 F.R.D. 468, 470 (D.Md.2005); *Thompson v. Dep't of Hous. & Urban Dev.,* 199 F.R.D. 168, 173 (D.Md.2001); *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 38–39 (D.Md.2000); *see also* Loc. R. 104.6 ("Responses to interrogatories and requests for production shall set forth each interrogatory or request followed by the answer and/or a brief statement of the grounds for objection, including a citation of the main applicable authorities (if any)."). "[F]ailure

---

**8.** In a July 15, 2010 letter, Defense counsel admitted that "the e-mailed interrogatories were unsigned," and said that she would "send the signature page" to Plaintiff's counsel. Pl.'s Mot. to Compel Ex. 4, ECF No. 54–6.

to do so may constitute a waiver of grounds not properly raised." *Hall,* 231 F.R.D. at 474. Because Defendant did not provide specific objections supported by particularized facts, it waived its improperly-raised objections. Rather than burden the Court with this dispute, what counsel should have done is meet face to face and discuss each disputed interrogatory and challenged response. Interrogatories that contained excessive subparts should have been redrafted to address a single subject. Boilerplate and evasive answers should have been amended.

### III. Discovery Violations with Regard to Plaintiff's Document Requests

In Plaintiff's request for production of documents, she stated that "[p]roduction can be accomplished by mailing the documents within the rule time to the undersigned trial attorney." Pl.'s Mot. to Compel Ex. 1. On June 29, 2010, the date on which its discovery response was due, Defendant responded to Plaintiff's document requests by objecting to the production of some documents and, with regard to the requests to which Defendant did not object, stating: "Defendant will produce responsive documents." *Id.* Ex. 2. Notably, Defendant did not object to the form of production, produce any documents with its response, or designate a date by which documents would be produced. *Id.* Defendant claims that "the documents ... were available for inspection and copying on June 29, 2010," and "plaintiff did not avail herself of the opportunity to inspect and copy the discovery documents." Def.'s Reply ¶¶ 3–4. Yet, neither Defendant's response nor any other document in the record before me informed Plaintiff that the documents "were available for inspection and copying on June 29, 2010."

Not having received the documents Plaintiff sought, Plaintiff's counsel emailed Defense counsel to request a "meet and confer telephone conference." Pl.'s Mot. to Compel Ex. 3. They conferred by telephone on July 14, 2010, and, according to Plaintiff's counsel, Defense counsel said that her "duty" was to make the requested documents "available," but Plaintiff's counsel insisted "that was not true." *Id.* On July 15, 2010, Defendant in-

formed Plaintiff that "[t]he cost for [the Office of the Attorney General] to photocopy the documents will be $.25 per page." *Id.* Ex. 4, ECF No. 54–6. By then, the deadline for producing documents had passed, and in any event, it still was not clear from Defendant's statement about copying costs that the documents were available at that time. It is not apparent from the filings that Plaintiff ever reviewed the documents to determine which, if any, to photocopy. In a July 19, 2010 email, Plaintiff's counsel said that if Defendant would not "bear the cost of producing the documents," then, "rather than going back and forth, the plaintiff will accept the .25 cents per page as [Defense counsel] stated in [her] earlier email." *Id.* Ex. 5, ECF No. 54–7. As with the dispute over the interrogatories, the conflict regarding Plaintiff's document production request never should have had to be brought to the Court for resolution. Counsel should have agreed upon a time and place for Plaintiff to review the documents responsive to her request, and, if she sought production in "hard copy," as opposed to electronically stored information, they should have been able to agree on a reasonable cost for copying.

■■■ It is improper to state, as Defendant did, that production will be made at some unspecified time in the future. *See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.,* 173 F.R.D. 651, 656 (D.Md.1997) ("[A] response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, ... is treated as a failure to answer or respond."). Therefore, when Defendant stated that the documents would be produced, without indicating when or how they would be made available, Defendant failed to respond to Plaintiff's request for production of documents as required by Fed.R.Civ.P. 34(b)(2)(A). *See also* Fed. R.Civ.P. 37(a)(4) ("evasive or incomplete ... response must be treated as a failure to ... respond"). Additionally, because Defense counsel failed to respond without conferring with Plaintiff's counsel to request additional time, she failed to "make [a] good faith effort[ ] to respond to discovery requests with-

in the time prescribed by th[e] rules," in violation of Discovery Guideline 9.a.

■ As the parties move forward with discovery, counsel will familiarize themselves with the document production requirements of Fed.R.Civ.P. 34. In this regard, it is true that "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Thompson,* 219 F.R.D. at 97; *see Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so). However, this rule does not preclude the producing party from charging the requesting party a reasonable amount to photocopy the documents that it makes available for the requesting party to review, provided the requesting party has specified in the production request that it seeks production of "hard copies" of documents.

■ Indeed, Rule 34(a)(1) provides that a party may request that the other party "produce and permit the requesting party to inspect, copy, test, or sample" relevant documents and tangible things. Rule 34(b)(1)(B) provides that the request "must specify a reasonable time, place, and manner for the inspection and for performing the related acts," and Rule 34(b)(2)(B) provides that the response to each item "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Thus, Defendant was not obligated to photocopy the documents and mail them to Plaintiff; Defendant only was obligated to make the documents available to Plaintiff for inspection and copying. *See* Fed.R.Civ.P. 34(a)(1). Also, Defendant "may charge as a photocopying expense" an amount that did "not exceed the rate established by the Court for taxation of costs." *See* Loc. R. 104.11.c. If Defendant did not want to photocopy the documents, it should have made clear to Plaintiff that the documents were available for inspection and objected to the form of production that Plaintiff requested as unreasonable. *See* Fed. R.Civ.P. 34(b)(1)(B), (b)(2)(B)-(C). Alternatively, had Defendant made clear in its response that the documents were available for inspection and could be copied by Defendant at $0.25 per page, Plaintiff could have informed Defendant that it found the cost unreasonable. In either case, the parties then could have conferred and agreed upon a reasonable amount or a time and place for Plaintiff to make copies at her own expense. Experienced counsel who conduct discovery as the Court expects them to do not bring trivial disputes like this to the Court for resolution.

■ Additionally, Defendant claimed res judicata as grounds for not responding to document requests. This is a violation of Rule 26(g)(1)(B), which requires that a discovery objection be "consistent with [the Federal Rules] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." Res judicata is an affirmative defense that "may properly be raised through a motion to dismiss under Rule 12(b)(6)." *Clark v. Wells Fargo Financial, Inc.,* No. 1:08CV343, 2008 WL 4787444, at *3 n. 4 (M.D.N.C. Oct.30, 2008); *see In re No-Burn Inc. v. Speller,* No. 05–10463, 2006 WL 4458703 at *2 (Bankr.M.D.N.C. Jan.21, 2006) (noting that "Creditor argued that many of the Discovery Requests were aimed at relitigating ... issues and thus were barred under the doctrines of res judicata and collateral estoppel"; concluding that it was "premature to consider arguments as to whether res judicata or collateral estoppel apply" because the matter before the court was "a Motion for a Protective Order regarding a discovery dispute"). It is not a proper ground for objection to discovery. If Defendant legitimately believed that res judicata was a bar to Plaintiff's discovery requests, in whole or in part, it should have filed a Rule 26(c) motion for protective order and sought a stay of discovery until the Court could determine the extent, if any, to which the affirmative defense of res judicata applied. Moreover, before bringing this dispute to the Court for resolution, counsel for Defendant and Plaintiff should have met to discuss Defendant's contention that Plaintiff was seeking discovery of information related to Plaintiff's prior unsuccessful lawsuits. Plaintiff's counsel then should have explained why, if at

all, what Plaintiff sought was within the scope of discovery. *See* Rule 26(b)(1). Only after having done so could any unresolved dispute be appropriately brought to this Court.

▇▇▇▇ Defendant also improperly asserts the Maryland Public Information Act, Md.Code Ann., State Gov't § 10–616(i) (MPIA) as a "privilege" in response to five document requests, claiming that "the request is for confidential employee records, which cannot be produced." Pl.'s Mot. to Compel Ex. 2 & 4. However, there is no legal justification for claiming that the MPIA is a privilege that would warrant refusal to produce documents pursuant to Fed.R.Civ.P. 26(b)(1). Rule 26(b)(1) "permits discovery into 'any matter ... that is relevant to the claim or defense of any party,'" unless it is privileged. *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 498 (S.D.Ind.2003) (citation omitted). It is true that "constitutional, statutory, and rule-based law may make records confidential or privileged," *Police Patrol Sec. Sys. v. Prince George's Cnty.*, 378 Md. 702, 838 A.2d 1191, 1198 (2003), but no such law pertains to the records at issue.

▇▇▇▇ The MPIA is "modeled on" the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and therefore "decisions interpreting the federal statute are persuasive in interpreting counterpart provisions of the MPIA." *MacPhail v. Comptroller*, 178 Md. App. 115, 941 A.2d 493, 496 (2008); *see Stromberg Metal Works, Inc. v. Univ. of Md.*, 395 Md. 120, 909 A.2d 663, 668 n. 2 (2006) ("[T]he purpose of the Maryland PIA is 'virtually identical' to that of the Federal FOIA and ..., except where there may be some relevant differences in two statutes, we may, and should, look to persuasive interpretations of the Federal Act."). This Court has stated that "FOIA does not displace discovery in domestic civil litigation under the Federal Rules of Civil Procedure." *In re Application of Mohamed Al Fayed*, 36 F.Supp.2d 694, 695 (D.Md.1999); *see Baldrige v. Shapiro*, 455 U.S. 345, 360 n. 14, 102 S.Ct. 1103, 71

L.Ed.2d 199 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery."); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Moreover, assertions of the FOIA "as defenses to production ... must be read as a claim of privilege, and as such [are] clearly inapposite. The FOIA neither expands nor contracts existing privileges, nor does it create any new privileges." *Ass'n for Women in Science*, 566 F.2d at 342, *superseded on other grounds by Rule 26(b)(1) as stated in Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C.1985); *see Chamber of Commerce v. Legal Aid Soc'y*, 423 U.S. 1309, 1310–11, 96 S.Ct. 5, 46 L.Ed.2d 14 (1975); *Verrazzano Trading Corp. v. United States*, 69 Cust.Ct. 307, 349 F.Supp. 1401, 1403 (Cust.Ct.1972). *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 101 F.R.D. 10, 11 (E.D.Pa.1983). Indeed, FOIA exceptions "'only ... permit the withholding of these categories of information from the public generally.'" *Bank of Am.*, 101 F.R.D. at 11 (quoting *Denny v. Carey*, 78 F.R.D. 370, 373 (E.D.Pa.1978)). Thus, in civil litigation, "the need of a litigant for the material must be taken into account, and may require disclosure where the FOIA itself would not." *Id.*; *see Jupiter Painting Contracting Co., Inc. v. United States*, 87 F.R.D. 593, 597 (E.D.Pa. 1980). Therefore, the MPIA does not bar discovery of otherwise-discoverable documents. *See MacPhail*, 941 A.2d at 496; *Ass'n for Women in Science*, 566 F.2d at 342; *Bank of Am.*, 101 F.R.D. at 11.

▇▇▇▇ It is apparent that Defendant failed to conduct legal research to determine whether the MPIA operated as a privilege to bar discovery, which is a violation of Rule 26(g). At most, it could be used as a basis to seek a protective order under Rule 26(c),[9] to ask the Court to impose conditions regarding the production of records within the scope of the MPIA that would adequately address any

---

**9.** In a July 19, 2010 letter sent by email and regular mail, regarding Defendant's refusal to produce documents, Plaintiff offered "to agree to

an appropriate protective order." Pl.'s Mot. to Compel Ex. 5.

confidentiality concerns. Instead, without citing any authority to support its position and apparently without ever researching the legitimacy of its position in the first place, Defendant improperly advanced the MPIA as a justification to refuse production of documents that Plaintiff requested.

 Further, despite asserting that it would not produce certain documents, ostensibly on the basis that they are privileged, and hence beyond the scope of discovery, *see* Fed.R.Civ.P. 26(b)(1), Defendant has not produced a privilege log. In an August 10, 2010 letter sent via email and regular mail, weeks after Defendant's documents were due, Defense counsel stated that she was "in the process of preparing a privilege log." Pl.'s Mot. to Compel Ex. 7. Also, on August 19, 2010, Defendant stated in its Opposition to Plaintiff's Motion to Compel that it "would provide the relevant statistical information regarding the FMLA requests made at Morgan State University, with a privilege log," Def.'s Opp'n ¶ 5, but there is no indication that it has done so. Fed.R.Civ.P. 26(b)(5)(A)(ii) requires that a party withholding information "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See also* Discovery Guideline 9.d (requiring "[t]he party asserting the privilege [to], in the objection to the interrogatory, document request, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed," as well as "the type of document"; "the general subject matter of the document"; "the date of the document"; and "such other information as is sufficient to identify the document"). "This description generally takes the form of a privilege log." *Cencast Servs. v. United States,* 91 Fed.Cl. 496, 502 (2010). Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege. *See Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 5:05CV41, 2006 WL 2715164, at *4 (N.D.W.Va. Sept. 22, 2006) ("Failure to timely produce a privilege log or the production of an inadequate privilege log may constitute waiver of any asserted privileges."); *Ruran v. Beth El Temple of W. Hartford, Inc.,* 226 F.R.D. 165, 168–69 (D.Conn.2005) (finding attorney-client privilege waived because defendant failed to provide a privilege log and consequently failed to perfect privilege claim); *Banks v. Office of Senate Sergeant-at-Arms,* 222 F.R.D. 7, 20–21 (D.D.C.2004) ("withholding of such a privilege log may ... be viewed by the court as a waiver of any privilege or protection"). Defendant only stated that the documents were "confidential employee records" to justify its refusal to produce them. It is clear that its terse description does not constitute a particularized justification for asserting privilege as a basis for refusing discovery and is insufficient to establish any privilege. Therefore, Defendant violated Fed.R.Civ.P. 26(b)(5)(A)(ii) and Discovery Guideline 9.d.

**IV. Discovery Violations with Regard to Plaintiff's Disclosures and Production of Documents**

 According to Defendant, Plaintiff has not made the expert witness disclosures required under Rule 26(a)(2);[10] "has not provided a complete set of medical records from the expert witnesses in response to Morgan's document production request"; and "also has not provided her complete medical records (other than an 'out-of-work' form) for Plaintiff's physician in Nigeria." Def.'s Mem. in Support of Mot. for Sanctions 4, ECF No. 68–1. Thus, the Court must consider (1) whether Plaintiff complied with the disclosure requirements of Rule 26(a)(2), and (2) whether Plaintiff complied with the requirements of Rule 34(b)(2) for document production.

Rule 26(a)(2)(A) provides that "a party must disclose to the other parties the identity

---

**10.** Although Defendant cites Rule 26(a)(2)(C), Rule 26(a)(2)(A) and (B) establish the required disclosures; subpart (C) establishes the timeline for disclosing expert testimony.

of any witness it may use at trial to present evidence under to Federal Rule of Evidence 702, 703, or 705." Counsel frequently refer to Rule 26(a)(2)(A) as requiring disclosure of "expert" witnesses, as opposed to the more technically accurate description, which is witnesses "who will provide opinion testimony." This is understandable, because only "expert" witnesses may provide testimony under Rules 702, 703, and 705. However, casual use of the word "expert" in connection with Rule 26(a)(2)(A) disclosures can blur the distinction between this rule, which only requires disclosure of the identity of any witness who will provide opinion testimony, and Rule 26(a)(2)(B), which requires substantially greater disclosures for expert witnesses retained or specifically employed to provide expert testimony at trial. In contrast to Rule 26(a)(2)(A), Rule 26(a)(2)(B) provides that "this disclosure must be accompanied by a written report ... if the witness is one retained or specially employed to provide expert testimony in the case or one whose regular duties as the party's employee involve giving expert testimony." Failure to appreciate the distinction between Rule 26(a)(2)(A) and 26(a)(2)(B) and to use precise language in discovery requests can, as happened here, lead to confusion and disputes that otherwise would be avoided if the rule were properly understood and discovery requests properly framed.

▮▮▮ Of import, treating physicians are included among the witnesses to whom the disclosure requirement of Rule 26(a)(2) applies if it is anticipated that they will provide opinion testimony or testify as to scientific, technical, or specialized information. Grimm, *Discovery Problems, supra,* at 243; *see Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 882 n. 4 (5th Cir.2004). The issue, however, is which disclosures must be made: Rule 26(a)(2)(A) disclosures (identity only) or Rule 26(a)(2)(B) disclosures (identity as well as a comprehensive disclosure of opinions, bases, compensation, and publications). Treating physicians may be fact witnesses as well as experts, Discovery Guideline 3.b, because "they are 'fact witnesses' in the sense that they have firsthand knowledge of relevant facts, but they also have the training, skill, education, and experience that would qualify them to give opinion testimony under Fed.R.Evid. 702." Grimm, *Discovery Problems, supra,* at 244. It is the "more lenient disclosure requirement of Rule 26(a)(2)(A) [that] applies to experts, such as treating physicians, who occupy a hybrid role." *Id.; see Sullivan v. Glock, Inc.,* 175 F.R.D. 497 (D.Md.1997)

It is true that Plaintiff identified Drs. Huang and Nze "as expert witnesses who may be used at trial to present evidence under Federal Rules of Evidence 702, 703 or 705." Def.'s Mot. for Sanctions Ex. A, ECF No. 68–2. However, in only providing their names, addresses, and telephone numbers, she clarified that "the following expert witnesses have not been retained or specially employed by the plaintiff to provide expert testimony in this case, neither are they employees of the plaintiff whose duties regularly involve giving expert testimony." *Id.* In email correspondence with Defense counsel, Plaintiff's counsel explained that the physicians "are fact witnesses who may be called on to testify at trial. Dr[.] Huang performed [Plaintiff's daughter Olachi's] surgery while Dr[.] Nze has been Dr[.] Rose Mezu's physician for years." Def.'s Mot. for Sanctions Ex. B, ECF No. 68–3. In her Opposition to Defendant's Motion for Sanctions, Plaintiff argues that Drs. Huang and Nze "are experts, of course, in that they have medical knowledge beyond that of a layperson," but "they are not now and never have been 'expert witnesses' for plaintiff, nor are they consulting experts of any sort." Pl.'s Opp'n 8. She stated that "neither is ever expected to render an opinion. They are fact witnesses, plain and simple." *Id.* at 9. Because the record before me suggests that the physicians are not serving as retained expert witnesses, but rather as "hybrid" fact/expert witnesses, Plaintiff only was required to make the Rule 26(a)(2)(A) disclosures, not the more extensive disclosures required by Rule 26(a)(2)(B), and it was improper of Defendant to have filed a motion seeking sanctions for production of disclosures to which it was not entitled under Rule 26(a)(2).

However, Rule 26(a)(2) speaks only to the *disclosures* Plaintiff was required to make absent any *discovery* request by Defendant,

and Defendant has other ways to seek information from Plaintiff's experts, whether hybrid or retained.[11] It is proper for Defendant to seek to discover opinions and the basis therefor for witnesses disclosed pursuant to Rule 26(a)(2)(A) under Rule 33, 34, or 30. Thus, although Defendant may not compel disclosures under Rule 26(a)(2)(A) beyond what it received, if Defendant wants to discover what Drs. Huang and Nze will testify to at trial, it is free to depose them. *See* Fed.R.Civ.P. 30(a)(1). Parties may also seek the opinions of witnesses through interrogatories or document requests. *See* Fed. R.Civ.P. 33(a)(2), 34(a)(1)(A), (c); *Sullivan,* 175 F.R.D. at 502 n. 7 (noting that interrogatories can be employed as "an independent method of requiring [the adverse party] to disclose [opinions and factual bases] for hybrid witnesses," and that "prudent counsel would be wise to include in their interrogatories two separate 'expert interrogatories,'" soliciting the opinions of hybrid and retained experts separately); *e.g.,* Loc. R.App. D. ("STANDARD INTERROGATORY NO. 8: For each witness identified by you in connection with the disclosures required by Fed. R.Civ.P. 26(a)(2)(A), provide a complete statement of the opinions to be expressed and the basis and reasons therefore"; Standard Doc. Req. No. 4: "All documents (including, but not limited to, fee agreements, reports, and correspondence) provided to, received from, or prepared by each witness identified by you in connection with the disclosures required by Fed.R.Civ.P. 26(a)(2)(A) or in connection with any witness identified in your Answer to Standard Interrogatory No. 8 or 9.").

Here, through interrogatories, Defendant asked Plaintiff to "[i]dentify any experts whom plaintiff expect[ed] to present testimony on her behalf at trial, state the opinion such expert will present, summarize the basis for such opinion and identify any reports prepared by such expert." Pl.'s Mot. to Quash Ex. 1, Interrog. No. 10, ECF No. 59-1. Plaintiff objected because the interrogatory was "overly broad and ... as worded ask[ed] for legal conclusions." Plaintiff added that she "ha[d] not completed preparation for the trial and ha[d] not designated any experts and as such the above report is not required. Plaintiff only has treating physicians who[m] she expects to testify at trial and the Plaintiff has already submitted a list to the defendant." *Id.* Defendant did not challenge Plaintiff's response, even though, as the above discussions show, Plaintiff's objections were boilerplate objections, such that Plaintiff waived her objections on those grounds, *see Hall,* 231 F.R.D. at 474; Plaintiff's Rule 26(a)(2)(A) disclosure had no bearing on Plaintiff's obligation to answer Defendant's interrogatory; and the hybrid experts' opinions were discoverable. Moreover, on the record before me, Defendant's interrogatory is ambiguous as worded, because it is not clear that Defendant seeks the opinions of hybrid fact/expert witnesses.[12] *Compare* Defendant's Interrogatory No. 10 ("any experts") *with* Standard Interrogatory No. 8 ("each witness identified by you in connection with the disclosures required by Fed.R.Civ.P. 26(a)(2)(A)"). Therefore, to the extent that Defendant could have obtained Plaintiff's experts' opinions through a properly worded interrogatory, it has not properly availed itself of the opportunity.

**11.** Once again, precise language is helpful. Rule 26(a) identifies three types of *disclosures* that must be made (absent Court order to the contrary), regardless of whether an adverse party has asked for the information. Technically speaking, the Rule 26(a) disclosures are not "discovery." "Discovery" refers to the methods of producing information that is within the scope of discovery stated in Rule 26(b)(1), and includes interrogatories (Rule 33), document production requests (Rule 34), depositions (Rules 30–32), motions for physical and mental examinations (Rule 35), and requests for admission of facts and genuineness of documents (Rule 36). There obviously is overlap between information learned

via "disclosures" and information learned through "discovery," and a party may seek information through both means. Thus, a party who wants to discover what a Rule 26(a)(2)(A) witness will testify to at trial can depose that witness or interpose an interrogatory asking for a summary of the testimony.

**12.** The record before me includes only the interrogatories as quoted in Plaintiff's response, not Defendant's original interrogatories, and therefore it is not apparent whether Defendant defined "experts" in the Definition section of its interrogatories.

Through Rule 34(b) document production requests, Defendant sought "medical records concerning or relating in any way to the facts or allegations set forth in plaintiff's Complaint." Pl.'s Mot. to Quash Ex. 1, Req. No. 1. Plaintiff objected to the request as "overly broad and burdensome," *id.,* a boilerplate objection that lacked particularized facts and therefore is a waiver of Plaintiff's objection on those grounds. *See Hall,* 231 F.R.D. at 474; *Thompson,* 199 F.R.D. at 173; *Marens,* 196 F.R.D. at 38–39. Nonetheless, she produced a medical report, a hospital bill, and three medication logs for her daughter, as well as "[r]eturn to work certification documents from Dr. Huang and others," and she stated that she would "supplement her answer ... as discovery continues."[13] Pl.'s Mot. to Quash Ex. 1. Defendant claims that the production was incomplete and should have included "a complete set of medical records" from Drs. Huang and Nze—the "experts"—, as well as Plaintiff's "complete medical records" from Plaintiff's physician in Nigeria. Def.'s Mot. for Sanctions 4. Additionally, Defendant insists that the release of medical records is imperative because when its counsel contacted Dr. Judy Huang, M.D., and Dr. Raymond Nze, M.D., to schedule their depositions, "she was informed that without a consent to release and discuss the medical records of [Plaintiff's daughter] Olachi Mezu and Plaintiff, they would be unable to answer any questions in a deposition." *Id.* at 21 & n. 7.

 As to Plaintiff's medical records, they are within her possession and control and therefore discoverable under Rule 34(a)(1), if relevant. Any medical record from Plaintiff's physicians in Maryland and Nigeria, showing that Plaintiff was "ill and was advised not to travel" when she was due to begin teaching in January 2009 are relevant to show that Plaintiff's absence from the first day of classes was justified and to support her claim in Count I (FMLA retaliation)

that she was "depriv[ed] of her duly entitled leave," in retaliation "for filing charges with the EEOC and for filing the First and Second Actions." Am. Compl. ¶¶ 50, 87–88. Therefore, Plaintiff is obligated to produce these medical records.

With regard to her daughter's medical records, any records showing that Plaintiff's daughter was recovering from surgery and in need of Plaintiff's care, for which Plaintiff applied for but was denied FMLA leave, are relevant to Count II (FMLA Interference) of Plaintiff's Amended Complaint. *See* Am. Compl. ¶¶ 97–100. However, it may be that other than the documents already produced, other records are not within Plaintiff's control. Counsel should have made themselves familiar with the Health Insurance and Portability Accountability Act, 42 U.S.C. § 1320d *et seq.* (1996) (HIPAA), and 45 C.F.R. §§ 164.512(e)(1) for the procedure for obtaining confidential medical records for a court proceeding. *See Law v. Zuckerman,* 307 F.Supp.2d 705, 711 (D.Md.2004).

Defendant also sought "documents sent to any expert whom [Plaintiff] plan[s] to call at the trial" in Request No. 14; and "documents referring or relating to any reports, drafts of any reports or correspondence from any expert [Plaintiff] consulted concerning the events alleged in the Complaint" in Request No. 15. Pl.'s Mot. to Quash Ex. 1. In response to Request Nos. 14 and 15, Plaintiff objected "on the grounds that her preparation for trial has not been completed," and stated that "Plaintiff will provide any such documents when they become available." *Id.* In an email that Plaintiff's counsel sent to Defense counsel on September 10, 2010, the day that Defense counsel filed Defendant's Motion for Sanctions, Plaintiff's counsel stated that there were "[n]o responsive documents for requests 14 and 15," and she reserved the right to supplement the production. Pl.'s Mem. of Law

---

13. Plaintiff's statement that she will supplement her document production "is gratuitous." *See* Grimm, *Discovery Problems, supra,* at 45 (noting that "Rule 26(e), 'Supplementation of Disclosures and Responses,' *requires* the respondent to supplement discovery responses in certain circumstances," such as when the respondent

*'learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing ....'* ") (quoting Rule 26(e)(1)(A)).

in Opp'n to Def.'s Mot. for Sanctions Ex. 2, ECF No. 73–2.

Like Defendant's interrogatories, discussed *supra*,[14] Defendant's Request Nos. 14 and 15 use the word "expert" ambiguously. If Defendant seeks documents reviewed by retained experts, which would be discoverable pursuant to Rule 26(a)(2)(B)[15] and Fed. R.Evid. 612, there are no documents for Plaintiff to produce because Plaintiff has no retained experts in this case. If Defendant seeks documents considered by Plaintiff's hybrid fact/expert witnesses in connection with any opinion testimony they may provide, then any documents considered by the witnesses currently would be discoverable if requested in a properly-framed request.

With regard to the disputes relating to the disclosures required by Plaintiff's doctors and Defendant's attempts to discover their anticipated trial testimony and the bases therefor, counsel should have been informed about the distinction between the Rule 26(a)(2)(A) and (B) disclosures, as well as the appropriate methods for discovering information beyond the Rule 26(a)(2)(A) disclosure, and they should have reached an agreement regarding how Defendant could do so consistent with the rules of procedure.

## V. Discovery Violations with Regard to Plaintiff's Deposition

### A. Defendant's Improper Use of a Subpoena to Compel Plaintiff to Appear for Deposition and to Produce Documents that Plaintiff Had Objected to Producing under Rule 34

█ Plaintiff moved to quash the subpoena Defendant served on her prior to her August 25, 2010 deposition. Pl.'s Mot. to Quash 1. The subpoena stated that Plaintiff was "COMMANDED to appear" for her deposition and "COMMANDED to produce and permit inspection and copying of the following documents," and it referenced a list of documents. *Id.* Ex. 2 & Att. A, ECF No. 59–2. The six document requests were almost verbatim reproductions of Defendant's Document Requests No. 6, 7, 9, 12, 14, and 15. Defendant stated that it served the subpoena for "plaintiff to appear for deposition" and for her "to bring documents objected to in her response to defendant's request for production of documents." Def.'s Response in Opp'n to Pl.'s Mot. to Quash ¶ 1. This motion is moot in part because the deposition has passed and Plaintiff appeared. Further, Plaintiff produced documents in response to Requests No. 6, 7, 9, and 12 on September 10, 2010. (Plaintiff's failure to produce documents in response to Requests No. 14 and 15 is discussed above.) However, the use of a subpoena to compel Plaintiff to appear for her deposition and to produce documents that already had been requested pursuant to Rule 34 but objected to by Plaintiff was improper in the absence of a Court determination as to whether the disputed documents should be produced.

█ Courts are divided as to whether Rule 45 subpoenas should be served on parties. *Compare Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D.Mass.1996) ("discovery of documents from a party ... is not accomplished pursuant to Rule 45.... Rule 34 governs the discovery of documents in the possession or control of the parties") *with Mortg. Info. Servs. v. Kitchens*, 210 F.R.D. 562, 564–65 (W.D.N.C.2002) (holding that a Rule 45 subpoena may be served on a party).

**14.** As with the interrogatories, the record before me includes only the document requests as quoted in Plaintiff's response, not Defendant's original requests, and therefore it is not apparent whether Defendant defined "experts" in the Definition section of its document requests.

**15.** I note that Defendant sought production of "drafts of any reports" prepared by Plaintiff's expert witnesses. While such drafts currently are discoverable under Rule 26(a)(2)(B), if the pending changes to Rule 26(a)(2)(B) become effective on December 1, 2010 as expected, the disclosures required for retained experts under Rule 26(a)(2)(B) will be narrowed and draft reports no longer will be disclosed. *See* Proposed Am. to Fed.R.Civ.P. 26, http://www.uscourts.gov/RulesandPolicies/ FederalRulemaking/PendingRules.aspx (last visited Oct. 18, 2010). In addition, the proposed amendments to Rule 26(a)(2) will expand the disclosures required for Rule 26(a)(2)(A) witnesses to include a disclosure of "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," as well as "a summary of the facts and opinions to which the witness is expected to testify." *Id.*

In either case, a subpoena certainly is not required to depose an adverse party under Fed.R.Civ.P. 30(a)(1). Nor is a subpoena necessary to obligate a party to produce documents, for which a Rule 34 production request suffices. If the parties are unable to resolve a dispute as to the documents to be produced in response to a Rule 34 document production request, the requesting party should address the other party's failure to produce documents through a motion to compel. Fed.R.Civ.P. 37(a)(1). Instead, Defendant attempted to use a subpoena, which is an order of the Court compliance with which if not quashed by the Court, is punishable by contempt, in circumstances where it was completely improper to do so because Plaintiff had objected to producing them under Rule 34, and Defendant had not moved to compel their production. The proper steps would have been first to meet and confer with Plaintiff and, if that proved unsuccessful, to file a motion to compel. *See id.*

### B. Counsels' Improper Conduct during Plaintiff's Deposition

During the August 25, 2010 deposition of Plaintiff, Defense counsel made much of the fact that Plaintiff is the mother of her attorney of record, suggesting that Plaintiff's counsel had "a conflict of interest in this case because [she is] the daughter of the Plaintiff." Mezu Dep. 116:4–6, Aug. 25, 2010; *see also id.* at 146:1–8 (Defense counsel informed Plaintiff's counsel: "I am going to be filing a Motion to Dismiss if your mother doesn't answer the question," and Plaintiff said "Stop referring to—she is my attorney. I think you should give her the respect as my attorney.... It is not a tragedy that she is my daughter."). While the mother-daughter relationship in and of itself does not create a conflict of interest in this case, it does make it more important for Plaintiff's counsel to exhibit the objective detachment expected to ensure that the animosity of the parties does not infect counsel, who are expected to be professionals. Moreover, from reading some of the comments made by counsel for Defen-

dant during Plaintiff's depositions, it also appears that counsel for Defendant lacks the necessary objective detachment. These facts provide insight into why discovery has been so contentious.

During Plaintiff's deposition, Plaintiff's counsel repeatedly objected and instructed Plaintiff not to answer. *See, e.g.,* Mezu Dep., 8:15–20, 15:16–17, 17:5, 18:20–21, 20:10–11, 21:5–7, 23:18–19, 24:12–20, 32:13, 35:4–5 & 18–19, 37:21, 38:9—39:4, 40:7, Aug. 25, 2010, ECF No. 68–5.[16] Rule 30(c)(2) provides that any objection made during the deposition "must be stated concisely in a nonargumentative and nonsuggestive manner," and that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the deposition] under Rule 30(d)(3)." Discovery Guideline 6.b provides that "it is presumptively improper for an attorney to make objections which are not consistent with Fed.R.Civ.P. 30(c)(2)." Further, if an objection could suggest how a deponent should answer, then it should be made out of the presence of the deponent. *Id.* It also is "presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R.Civ.P. 30(c)(2)." Discovery Guideline 6.d. Additionally, Local Rule 606 provides that "The Court expects ... all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before the Court," and Discovery Guideline 1.c requires that counsel "behave professionally and with courtesy towards all involved in the discovery process, including but not limited to opposing counsel, parties and nonparties." Abusive conduct toward a party or opposing counsel during a deposition is a violation of Local Rule 606 and Discovery Guideline 1.c. *Freeman v. Schointuck,* 192 F.R.D. 187, 188 (D.Md.2000).

Plaintiff's counsel generally tried to state her objection concisely at the outset. As

---

**16.** Although these examples fall within the first forty pages of the 240–page transcript, they typify the exchanges among Plaintiff's counsel, Plaintiff, and Defense counsel that occurred through-

out the deposition, and are cited only as illustrations. The tenor of the deposition did not change as the deposition continued.

examples, she said, "Objection. What is the relevance?"; "Objection. Vague and ambiguous"; "Asked and answered. I am object[ing]"; "Objection. The document speaks for itself"; and "Calls for speculation. I object." Mezu Dep., 8:15–20, 17:5, 23:18–19, 24:12, 35:4–5, 37:21. These objections were stated properly. However, the concise objections often led to improper, longer, argumentative exchanges between counsel and instructions not to answer, in violation of Rule 30(c)(2), Local Rule 606, and Discovery Guidelines 1.c and 6.b. For example, Defense counsel asked Plaintiff how she "underst[oo]d a burial of a parent as fitting into ... FMLA Leave," and the following ensued, *id.* at 38:6—39:6:

MS. IBE: I object to that.

MS. SWANN: You can answer.

MS. IBE: It calls for speculation.

MS. SWANN: She had to have some sort of understanding.

MS. IBE: It calls for speculation.

MS. SWANN: It is discovery. This is not—we are not at trial.

MS. IBE: It calls for speculation. She is not supposed to speculate to her understanding of something.

MS. SWANN: It is not speculation.

MS. IBE: It is speculation.

Q What do you understand? How do you understand a burial to fit into FMLA Leave?

MS. IBE: It calls for speculation. I instruct you not to answer that.

MS. SWANN: Well, we may have to get the judge on the line.[17]

Similar arguments happened repeatedly throughout the deposition. *E.g.*, Mezu Dep. 42:20—43:14, 62:9—63:4, 63:16—65:5, 115:10—117:7. Such exchanges suggest that Plaintiff's counsel did not understand that the objection "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P. 30(c)(2). And, it is clear from the bickering between counsel that neither

exhibited the courtesy required by Local Rule 606 and Discovery Guideline 1.c. Also, as seen in the above example, Plaintiff's counsel instructed Plaintiff not to answer on grounds other than privilege or Court-ordered limitation, in violation of Rule 30(d)(3), Discovery Guideline 6.d, and Maryland Rule of Professional Conduct 3.4 (adopted by this Court, *see* Loc. R. 704), which prohibits counsel from unlawfully obstructing the other party's access to evidence.

■ Additionally, Plaintiff's counsel made suggestive "speaking objections" in the presence of the deponent. For example, when Plaintiff answered the question "Did you look at the form?" by stating that she "filled it out," and Defense counsel repeated the question, Plaintiff's counsel said, "She doesn't remember what she did.... [T]hat was a long time ago." Mezu Dep. 39:16—41:1. After Plaintiff's counsel repeated four times that Plaintiff did not remember, Plaintiff, predictably, testified: "I don't remember what happened." *Id.* at 40:18—42:3; *see also, e.g., id.* at 55:19—56:18 (Plaintiff's counsel said, "I object. This happened too long ago. You are asking her to speculate as to what happened almost two years ago," and Plaintiff testified, "It is too far away, too long ago."), 113:21—114:5 (Plaintiff's counsel said, "The documents speak for themselves," and Plaintiff testified, "Whatever the documents say, that is what it is."), 146:15–17 (Plaintiff's counsel said, "She already responded," and Plaintiff testified, "I was telling you that I had already answered you that question."). By making objections that suggested to Plaintiff what her response should be, Plaintiff's counsel violated Discovery Guideline 6.b.

■ Over the course of Plaintiff's deposition, her counsel objected more than fifty times. She interjected frequently to answer questions for Plaintiff. For example, Defense counsel asked plaintiff, "I am asking if you recall whether you got it or not?" and Plaintiff's counsel interjected, "She doesn't remember. She said she doesn't remember

**17.** There is no evidence that Defense counsel attempted to contact the Court during the deposition pursuant to the Court's expedited procedures for resolving discovery disputes in exigent

circumstances. *See* D. Md. Emergency Dispute Resolution Procedure (July 2010), http://www.mdd.uscourts. gov /news/news/dutydiscoveryjudgefinaledit.pdf.

the actual amount." Mezu Dep. 57:4–7. The frequency of counsel's objections and interjections and the length of the ensuing discussions impeded the deposition and frustrated the examination of Plaintiff. *See* Fed. R.Civ.P. 30(d)(2) (stating that Court may impose sanctions on a person who "impedes . . . or frustrates the fair examination of the deponent"). This, also, is in violation of Maryland Rule of Professional Conduct 3.4 and Local Rule 606, and Discovery Guideline 1.c.

■ It has been noted that "[w]hen an attorney for one of the parties misbehaves badly during pretrial discovery, there is a very real danger that others will do the same, fighting fire with fire." *Freeman,* 192 F.R.D. at 189 n. 6. Thus, it is unsurprising that Plaintiff's counsel stated repeatedly that Defense counsel was "badgering" Plaintiff. *See* Mezu Dep. 40:7, 66:4, 114:18, 116:7, 118:17, 21, 158:14, 178:1. Nor is it surprising that Plaintiff's accusations often had merit. One instance that Plaintiff characterized as "badgering" was when Defense counsel asked Plaintiff the date of the wedding of one of her daughters, and Plaintiff said that she did not remember. Mezu Dep. 177:2–3. Defense counsel asked the question again, and then said "Let's go through the months. Maybe that will help you remember. Was it September?" *Id.* at 177:6–13. Plaintiff stated repeatedly that she could not remember, but Defense counsel insisted on asking if it was October, November, or December, before accepting Plaintiff's response that she did not remember. *Id.* at 177:14—180:2. In another instance, Defense counsel asked if Plaintiff "receive[d] FMLA Leave for this illness"; Plaintiff's counsel noted that the question was asked and answered; and after Defense counsel repeated the question three times and stated that the question was "not controversial," Plaintiff said that she already answered the question. Mezu Dep. 117:14—118:18. Defense counsel replied, "Well, I have forgotten the answer, so please inform me," and refused to go back in the record for the answer, stating, "This is so outrageous." *Id.* Questions of this nature are presumptively improper and violate Discovery Guideline 6.c ("An attorney should not repeatedly ask the same or substantially identical question of a deponent if the question already has

been asked and fully and responsively answered by the deponent. Upon objection by counsel for the deponent, or by the deponent if unrepresented, it is presumptively improper for an attorney to continue to ask the same or substantially identical question of a witness unless the previous answer was evasive or incomplete."). Additionally, at other times, although Plaintiff's counsel objected only to the questions, not to Defense counsel's tone with her client, Defense counsel insulted Plaintiff's intelligence by characterizing her inquiry as "a simple question." Mezu Dep. 44:4–7, 86:15–18.

As stated *supra,* counsel must "conduct themselves in a professional and courteous manner in connection with all matters pending before the Court." Local Rule 606; *see* Discovery Guideline 1.c; *see also Freeman,* 192 F.R.D. at 188–89. Moreover, if the deponent answers a question completely, counsel "should not repeatedly ask the same or substantially identical question." Discovery Guideline 6.c. And, although a deposition such as this is unlikely to be "a non-stop exchange of pleasantries," it nonetheless "must not be allowed to become an excuse for counsel to engage in acts of rhetorical road rage against a deponent and opposing counsel." *Freeman,* 192 F.R.D. at 189. Defense counsel's conduct lacked the required professionalism and courtesy and violated Discovery Guidelines 1.c and 6.c.

In the face of such improper questioning, the proper tack for Plaintiff's counsel to have taken would have been to "move to terminate or limit [the deposition] on the ground that it [was] being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed.R.Civ.P. 30(d)(3)(A); *see also* Discovery Guideline 6.c. Further, Plaintiff's counsel could have demanded the suspension of the deposition for the Court to rule on the motion, *see* Fed.R.Civ.P. 30(d)(3)(A), or availed itself of the Court's expedited procedures for resolving discovery disputes in exigent circumstances, *see* D. Md. Emergency Dispute Resolution Procedure (July 2010), http://www.mdd. uscourts.gov/news/news/dutydiscoveryjudge finaledit.pdf. However, she did not do so, but rather continued to bicker with Defense counsel, which further exacerbated the problems.

According to Defendant, during Plaintiff's August 25, 2010 deposition, Plaintiff "was noncooperative and evasive." Def.'s Mot. for Sanctions 3. For example, Defense counsel asked Plaintiff, repeatedly, whether she looked at the form she filled out for leave to attend her mother's burial, and Plaintiff would state no more than that she "filled it out," which is an evasive response and tantamount to a refusal to answer. *See* Fed. R.Civ.P. 37(a)(4); Mezu Dep. 39:13—46:2. Ultimately, Plaintiff said that she did look at the form when she filled it out. *Id.* In another instance, Defense counsel asked Plaintiff if she knew "the extent of [her] illness," and Plaintiff informed her: "I am sure you have my medical records. You will have to go through the records." *Id.* at 112:6–9. Defense counsel also noted for the record at least eleven instances when Plaintiff refused to answer a question. *E.g., id.* at 105:5, 112:1–2, 117:11, 134:12–13, 135:20, 146:18, 169:6–8, 172:6–10, 179:4, 181:14–16, 186:21.

 Rule 37(a)(3)(B)(i) provides that a party may move the Court to compel an answer if "a deponent fails to answer a question asked under Rule 30 or 31." As noted, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). In its Motion for Sanctions, Defendant moves for dismissal and, in the alternative, for the Court to compel Plaintiff to appear at a second deposition. However, Defense counsel has not complied with Fed. R.Civ.P. 37(a)(1) or Local Rule 104.7. Although she stated in two footnotes that she attempted to confer with Plaintiff's counsel about the documents Plaintiff did not produce, *see* Def.'s Mot. for Sanctions 4 n. 5 & 22 n. 8, there is no Certificate of Good Faith Effort, nor other indication that Defense counsel conferred or attempted to confer with Plaintiff's counsel about Plaintiff's incomplete and evasive deposition responses. Because Defense counsel has not complied with Rule 37(a)(1) or Local Rule 104.7, the Court will not consider Defendant's motion to compel. Yet, Plaintiff should be aware that, pursuant to Fed.R.Civ.P. 30(d)(2), the Court may impose sanctions on a person who "impedes . . . or frustrates the fair examination of the deponent." When counsel for Plaintiff and Defendant meet in person to confer as directed below, they will address Plaintiff's failure to provide responsive answers and would be wise to agree upon a resolution without further involvement by the Court.

## VI. Other Alleged Violations

Defense counsel noted, as another grounds for revocation of Plaintiff's counsel's admission *pro hac vice* to this Court, that Plaintiff failed to comply with Local Rule 105.2(c) in filing her Motion for Partial Summary Judgment, ECF No. 56. On September 17, 2010, Judge Nickerson granted Defendant's Motion to Strike Plaintiff's Motion for Partial Summary Judgment, ECF No. 63, on the ground that Plaintiff failed to comply with Local Rule 105.2(c). ECF No. 72. This nondiscovery violation adds to the list of Plaintiff's violations of the Federal and Local Rules thus far.

As the foregoing discussion lamentably demonstrates, the conduct of discovery in this case has been seriously deficient and inappropriate in multiple areas. Counsel for Plaintiff and Defendant have demonstrated deficient knowledge of fundamental rules of procedure, local rules, discovery guidelines, and decisional authority which, collectively, unambiguously establish the Court's expectation about how discovery is to be conducted to achieve the aspirations of Fed.R.Civ.P. 1 (a "just, speedy, and inexpensive determination" of the claims and defenses), 26(b)(2)(C) (discovery that is proportional to what is at issue in the case), and 26(g) (discovery that is "complete and correct," "not interposed for any improper purpose," and "neither unreasonable nor unduly burdensome or expensive"). Instead, the filings suggest that Plaintiff and her employer have been at odds for years, and this history of animosity has infected the pretrial conduct of this case. The sheer number of filings hurling allegations and counter-allegations demonstrates that the approach to the remaining discovery must be changed. To accomplish that, the following is ORDERED:

1. Within ten (10) days, counsel will submit a written verification that they carefully have read (1) Federal Rules of Civil Procedure 1, 26–37, and 45; (2) the Local Rules of this Court; (3) the Discovery Guidelines of

this Court; and (4) *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D.Md. 2008), in which this Court said that "the 'spirit and purposes' of these discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation" and that "Counsel cannot 'behave responsively' during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation." *Id.* at 357–58.

Because I find that both parties and their counsel are at fault for what has gone wrong with discovery to date, I am denying their cross motions for attorney's fees and costs. I caution them, however, that failure to comply with the corrective action ordered, and to conduct discovery in accordance with this order, the rules of procedure, local rules, and discovery guidelines may subject the parties and their counsel to Rule 37 sanctions.

2. Within twenty-one (21) days (unless otherwise agreed by counsel or ordered by the Court), counsel will meet and confer *in person* with the goal of cooperatively resolving as many of the existing disputes as possible, and jointly develop a proposed discovery plan and schedule to complete the remaining discovery. In this regard, counsel will be guided by Rules 26(b)(2)(C) and 26(g), and they will tailor what discovery remains to ensure that it is proportional to what is at issue in this case, which includes an assessment of what damages are reasonably recoverable if Plaintiff prevails in her claims. The conference shall be held in this Courthouse and will be recorded so that, if there are claims that either counsel is behaving improperly, I will be able to listen to the recording and determine whether counsel have behaved properly. At the conclusion of this conference, there will be an in-court hearing during which I will resolve any remaining disputes, and the discovery plan will be approved. Counsel will jointly contact my chambers to schedule the date of the conference/hearing.

3. Until such time that counsel and the parties can demonstrate that they are approaching discovery in the proper manner, they are prohibited from filing any discovery motions without the advance permission of the Court. Instead, I will hold in-court discovery status conferences every other week that must be attended by all counsel who have entered their appearance in this case. Once I am convinced that discovery is proceeding as it should, I will consider whether these discovery status conferences can be accomplished through teleconference. The schedule for these status conferences will be established at the conference/hearing required in Paragraph 2 above.